79 P.3d 990 (2003)
119 Wash.App. 176
STATE of Washington, Respondent,
v.
Henry GUZMAN Jr., Appellant.
No. 21419-2-III.
Court of Appeals of Washington, Division 3, Panel Nine.
November 20, 2003.
*991 Stephanie C. Cunningham, Attorney at Law, Seattle, WA, for Appellant.
Lauri M. Boyd, Deputy Prosecuting Attorney, Yakima County CourthouseAppellant Division, Yakima, WA, for Respondent.
KURTZ, J.
Henry Guzman Jr. was convicted of third degree rape. The victim was his wife's 16-year-old sister, M.J. On appeal, Mr. Guzman contends that the amended information omitted an essential element of third degree rape and that the trial court erred by admitting evidence of a 1995 incident of sexual contact *992 between Mr. Guzman and M.J. Mr. Guzman's conviction is reversed because the charging document did not state the essential elements of third degree rape. The charge is dismissed without prejudice.

FACTS
Mr. Guzman was charged by an amended information with first degree sexual misconduct with a minor or, alternatively, third degree rape. Mr. Guzman is married to Sheila Johnson Guzman. The alleged victim, M.J., is Ms. Guzman's younger sister. At the time of the incident, M.J. was 16 years old.
Pretrial Evidentiary Ruling. Before trial, the court held a hearing to determine whether to allow the State to present evidence of a sexual contact between Mr. Guzman and M.J. that occurred in 1995, some six years prior to the charged crime. At the time of this earlier incident, M.J. was 10 years old. Testimony revealed that during the 1995 incident, Mr. Guzman touched M.J.'s breasts.
The trial court determined that the evidence related to this earlier incident was admissible. The trial court concluded that the evidence was probative of whether Mr. Guzman had a "lustful disposition" toward M.J. and that the potential prejudice did not outweigh the probative value. Report of Proceedings (RP) at 50.
Testimony. At trial, M.J. testified about the two incidents of sexual contact with Mr. Guzman. The first incident took place in 1995 and the second incident took place in 2001.
M.J. testified that on July 17, 1995, when she was 10 years old, she visited Mr. Guzman and her sister, Ms. Johnson, who were living together but not yet married. When M.J. visited her sister, M.J. would sleep on the floor and Mr. Guzman and Ms. Johnson would sleep in the bed.
On this particular evening, Mr. Guzman came home after everyone was in bed and smelled like alcohol. Soon, Mr. Guzman and Ms. Johnson started arguing. When Mr. Guzman would not stop arguing, Ms. Johnson eventually got out of bed and went to sleep on the floor next to M.J. At one point, Ms. Johnson woke up because she heard Mr. Guzman talking to M.J.; Ms. Johnson told him to leave M.J. alone. Then, Ms. Johnson went back to sleep.
Later, M.J. awoke because she felt someone touch her shoulder; she felt Mr. Guzman touch her breast. M.J. called out for her sister, who woke up, turned on the light, and told Mr. Guzman to leave. M.J. later told Ms. Johnson that Mr. Guzman had asked M.J. to get into bed with him and asked if he could kiss her.
The next morning, M.J.'s mother contacted the police, and M.J. made a written statement to police describing the incident. This statement was admitted into evidence.
Mr. Guzman testified that he did not remember the incident because he had been drinking the entire day. Ms. Johnson, now Ms. Guzman, testified that at that time Mr. Guzman had a serious drinking problem and often blacked out or hallucinated when he drank.
After the 1995 incident, M.J.'s relationship with her sister and Mr. Guzman was normal and they saw each other regularly. In mid-August 2001, M.J. went to stay with the Guzmans at their home in Wapato, Washington, to visit and to help the Guzmans care for their house and their children.
M.J. testified that on August 15, 2001, Mr. Guzman raped her while Ms. Guzman was at work. M.J. stated that between 8:30 and 9:00 that morning, she was sitting on the couch watching television; she was wearing the outfit she had slept ina pair of shorts and a t-shirt. Mr. Guzman was sitting in a chair next to the couch; he was wearing boxer shorts. The Guzman children were playing outside.
According to M.J., Mr. Guzman came over, sat down next to her on the couch, he put his hand under the blanket, and touched her bare thigh. When M.J. got up and started to walk away, Mr. Guzman grabbed her and pushed her to the floor. M.J. stated that Mr. Guzman got on top of her, held her legs down with his legs, and held her arms above her head with his hand. Mr. Guzman tried to take her shirt off and touched her breast.
*993 He then pulled her underpants and shorts down to her knees and put his penis in her vagina. Eventually, he let go of her legs; M.J. then kicked him off, got up, and locked herself in the bathroom.
M.J. stayed with the Guzmans for the rest of the planned visit. M.J. did not tell her sister or her parents what had happened. According to M.J., Mr. Guzman told her every chance he could that she should not tell anyone about the incident. She did write an entry in her diary describing the incident. Later, M.J. confided in her therapist and a school counselor that she had been raped. The therapist encouraged M.J. to contact the police.
Mr. Guzman denied raping M.J. and denied ever having sexual intercourse with M.J.
Conviction. Before submitting the case to the jury, the court granted Mr. Guzman's motion to dismiss the alternative charge of sexual misconduct with a minor because the State failed to establish that Mr. Guzman abused a supervisory position. The jury found Mr. Guzman guilty of the remaining charge, third degree rape. The court imposed a sentence in the standard range. Mr. Guzman appeals.

ANALYSIS
Admission of 1995 Incident. Mr. Guzman contends the trial court erred by admitting evidence that he had prior sexual contact with M.J. He contends the evidence related to the 1995 incident is not relevant to show that he had a lustful disposition toward M.J. because the incident took place six years earlier, and no other incidents occurred during the intervening years. In response, the State contends the admission of the evidence related to the 1995 incident was probative and not unfairly prejudicial. Furthermore, the State maintains that the admission of this evidence was an appropriate exercise of the trial court's discretion.
ER 404(b) provides as follows:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
However, evidence of a defendant's prior sexual acts against the same victim is admissible to show the defendant's lustful disposition toward that victim. State v. Ray, 116 Wash.2d 531, 547, 806 P.2d 1220 (1991). When considering lustful disposition, it is important that the prior conduct reveals a sexual desire for that particular victim. See State v. Ferguson, 100 Wash.2d 131, 134, 667 P.2d 68 (1983) (quoting State v. Thorne, 43 Wash.2d 47, 60-61, 260 P.2d 331 (1953)).
To admit evidence of other wrongs under ER 404(b), the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value of the evidence against its prejudicial effect. State v. Pirtle, 127 Wash.2d 628, 649, 904 P.2d 245 (1995). We review the trial court's decision to admit such evidence for an abuse of discretion. Id. at 648, 904 P.2d 245.
The trial court here found that the evidence of the 1995 incident was relevant to show that Mr. Guzman had a lustful disposition toward M.J. and that the probative value of this evidence outweighed its potential effect. In making this decision, the court relied on Ray. In Ray, the prior incidents of sexual contact occurred approximately 10 years before the crime charged. Ray, 116 Wash.2d at 547, 806 P.2d 1220. The court concluded that the trial court had not abused its discretion in admitting this evidence in light of the fact that the victim had been in foster care during that time and Mr. Ray could not approach her. Id. at 547-48, 806 P.2d 1220.
Mr. Guzman contends that Ray is distinguishable and that the trial court erred by admitting evidence of the 1995 incident here. He points out that he, unlike Mr. Ray, had regular contact with the victim during the six years between the alleged incidents.
*994 As the court noted in Ray, "[t]he limits of time over which evidence may range lies within the discretion of the trial court." Id. at 547, 806 P.2d 1220. While the record indicates that Mr. Guzman and M.J. had some social contact in the intervening years, the testimony does not indicate that this contact was extensive. After the 1995 incident, Ms. Johnson moved back with her parents for four months, but then got back together with Mr. Guzman; the couple married in 1998. The Guzmans visited the home of Ms. Guzman's parents and M.J. about once a month. M.J. also sometimes visited the Guzmans in their home. Based on the record here, the trial court did not abuse its discretion by admitting evidence of sexual contact occurring six years earlier.
Mr. Guzman also contends the trial court erred when balancing the probative value of this evidence against its prejudicial effect. He asserts that the probative value of the evidence is limited because he was intoxicated during the 1995 incident and could not have been motivated by a lustful disposition toward M.J. He further contends that the evidence of his former drinking problem made him look less credible than M.J. in the eyes of the jury.
We review the trial court's decision for an abuse of discretion. Here, the trial court carefully weighed the probative value of the evidence against the risk of prejudice. The trial court found the evidence highly probative to show that Mr. Guzman had a lustful disposition toward the victim. The trial court also determined that the probative value outweighed the prejudice to Mr. Guzman. In making this determination, the trial court noted that Mr. Guzman would have the opportunity to cross-examine both M.J. and Ms. Guzman. Ms. Guzman testified that Mr. Guzman had gone through treatment at AA and that he had "changed completely." RP at 409. M.J. testified that after the 1995 incident her parents told her not to have contact with Mr. Guzman; however, there were no discussions with her parents prior to her visit in August 2001 because Mr. Guzman had stopped drinking.
Based on this record, the trial court did not abuse its discretion by admitting evidence of the 1995 incident.
Criminal Information. A charging document must contain all essential elements of the charged crime, whether statutory or nonstatutory, to inform the defendant of the charges and to allow the defendant to prepare a defense. State v. Kjorsvik, 117 Wash.2d 93, 101-02, 812 P.2d 86 (1991). When the sufficiency of a charging document is challenged for the first time on appeal, the document is to be liberally construed. Id. at 105, 812 P.2d 86. To determine the sufficiency of an information challenged for the first time on appeal, this court must determine (1) whether the necessary facts appear in any form or can be found by fair construction in the information; and, if so, (2) whether the defendant can show that actual prejudice resulted from the information's inartful language. Id. at 105-06, 812 P.2d 86.
Mr. Guzman was charged with third degree rape under RCW 9A.44.060(1)(a), which reads:
(1) A person is guilty of rape in the third degree when, under circumstances not constituting rape in the first or second degrees, such person engages in sexual intercourse with another person, not married to the perpetrator:
(a) Where the victim did not consent as defined in RCW 9A.44.010(7), to sexual intercourse with the perpetrator and such lack of consent was clearly expressed by the victim's words or conduct [.]
(Emphasis added.) Under 9A.44.010(7), "consent" means "at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact."
Hence, under RCW 9A.44.060(1)(a), the State must show that (1) the victim did not freely agree to sexual intercourse with Mr. Guzman, and that (2) the lack of consent was clearly expressed to Mr. Guzman by words or conduct.
The charging document here contained a citation to RCW 9A.44.060(1)(a) and the following language:

*995 [Y]ou engaged in sexual intercourse with a victim, whose name will be released by court order only, not your spouse, who did not in actual words or conduct clearly and freely indicate agreement to have sexual intercourse.
Clerk's Papers at 81. Consequently, the charging document did not inform Mr. Guzman of the element requiring proof that the victim expressed her lack of consent by actual words or conduct.
Under the liberal construction rule, a charging document will be upheld if the missing element may be fairly implied from the language within the document. Kjorsvik, 117 Wash.2d at 108-09, 812 P.2d 86. However, even applying the liberal Kjorsvik standard, this court cannot conclude that a liberal construction of the charging document provided Mr. Guzman with adequate notice of the charge against him. Notice that the victim failed to indicate agreement is not the same as notice that the victim must also have clearly expressed her lack of consent by words or conduct.
Because the amended information lacks an essential element, the court need not address the issue of prejudice. The State's assertion that Mr. Guzman's defense was that no act of sexual intercourse occurredand that consent was not an issuegoes to the issue of prejudice, not the sufficiency of the language of the charging document. The charging document here is insufficient because it fails to set forth an essential element of the crime charged. The conviction is reversed and the charge dismissed without prejudice. See Kjorsvik, 117 Wash.2d at 111, 812 P.2d 86; State v. Green, 101 Wash.App. 885, 891, 6 P.3d 53 (2000), review denied, 142 Wash.2d 1018, 16 P.3d 1266 (2001).
I CONCUR: KATO, A.C.J.
SWEENEY, J. (concurring).
The majority accurately states the law set out in State v. McCarty.[1] Under existing law no showing of prejudice is required. It also quite correctly points out that the charging document here does not track the third degree rape statute, RCW 9A.44.060(1)(a). And it is, therefore, deficient, and constitutionally so. I nonetheless write separately because in my judgment this should be harmless error. See Dennis J. Sweeney, An Analysis of Harmless Error in Washington: A Principled Process, 31 GONZ. L.REV. 277 (1995-96).
Henry Guzman's defense here was, essentially, "I didn't do it." That portion of this criminal information which improperly substituted lack of agreement for the statutorily required lack of consent is therefore of no moment. Had Mr. Guzman's defense been that the complaining witness agreed or acceded to his request, then he might well have been prejudiced by an information that improperly spelled out that element for the jury. But here when his factual assertion is not in any way based upon the victim's expression of lack of consent, he is not prejudiced.
Moreover, the trial judge's instructions to the jury included instruction 5.[2] She specifically tells the jury that to convict Mr. Guzman of the crime of third degree rape the State must prove beyond a reasonable doubt "[t]hat [M.J.] did not consent to sexual intercourse with the defendant and such lack of consent was clearly expressed by words or *996 conduct." Report of Proceedings at 524. This language tracks the rape statute precisely.
We apply a harmless error standard to a broad range of constitutional errors. State v. Smith, 148 Wash.2d 122, 138-39, 59 P.3d 74 (2002)(right to confrontation); State v. Brown, 147 Wash.2d 330, 344, 58 P.3d 889 (2002)(jury instructions); State v. Romero, 113 Wash.App. 779, 790, 54 P.3d 1255 (2002)(comments on the right to remain silent). Indeed, "most constitutional errors are presumed to be subject to harmless error analysis." State v. Banks, 149 Wash.2d 38, 43, 65 P.3d 1198 (2003). The adequacy of a criminal information should be no different.
This is not, or at least should not be, an exercise in judicial sophistry. If a constitutional error resulted in a charging document or trial or a sentence that was unfair or can be construed in some logical fashion as harming the defendant, then the case should certainly be reversed. Sweeney, supra, at 280-81. But that did not happen here. If the harmless error doctrine is to be applied to a constitutional error, then it should be applied fairly and across the aboard to any constitutional error amenable to a harmless error analysis.
Now, certainly, there is error which defies a harmless error analysis. Banks, 149 Wash.2d at 43, 65 P.3d 1198. But these are errors which "`"infect the entire trial process" and "necessarily render [the whole] trial fundamentally unfair."'" Id. (quoting Neder v. United States, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))(quoting Brecht v. Abrahamson, 507 U.S. 619, 630, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) and Rose v. Clark, 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). They would include constitutional errors in the makeup of the jury pool, or the jury selection. State v. Guloy, 104 Wash.2d 412, 432, 705 P.2d 1182 (1985)(Brachtenbach, J., concurring)(discrimination in the selection of a jury)(citing Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967)). Or they would include constitutional errors involving the adequacy of trial counsel. See State v. Lopez, 79 Wash. App. 755, 767, 904 P.2d 1179 (1995)(violation of Sixth Amendment right to effective assistance of counsel is not harmless error). Both of these examples involve error that is intrinsic to the trial and simply defy harmless error analysis. There is no way to analytically evaluate the effect of this type of error on the trial. But that is not the case with flawed charging documents.
We should not have to reverse this conviction. But we must.
NOTES
[1] 140 Wash.2d 420, 425, 998 P.2d 296 (2000).
[2] Instruction 5 states:

"To convict the defendant of the crime of Third Degree Rape, each of the following elements of the crime must be proved beyond a reasonable doubt:
"(1) That on, about or during August 12, 2001 and August 31, 2001, the defendant engaged in sexual intercourse with [M.J.];
"(2) That [M.J.] was not married to the defendant;
"(3) That [M.J.] did not consent to sexual intercourse with the defendant and such lack of consent was clearly expressed by words or conduct; and
"(4) That the acts occurred in The State of Washington.
"If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
"On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty." Clerk's Papers at 47.