FILED
SEPTEMBER 7, 2017
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 34333-2-III |
| Respondent, | ) | |
| v. | ) | |
| JONATHAN R. TERRY, | ) | UNPUBLISHED OPINION |
| Respondent, | ) | |
| LISA BONSELL, | ) | |
| Interested Party. | ) | |

KORSMO, J. — Jonathan Terry appeals from his juvenile court adjudication for third degree rape, contending that the evidence was insufficient. Believing that the trial court could draw the inferences it did, we affirm.

FACTS

Mr. Terry was charged alternatively with second and third degree rape of J.M., who was 16 at the time.[1] Mr. Terry was nearly a year older. The incident giving rise to the charges occurred at a party in June 2013. The charges proceeded to bench trial in the Walla Walla juvenile court.

N.R. hosted a party at her father's house; no adults were present. Guests included D.R. (the boyfriend of N.R.), J.M., and Mr. Terry. The four teenage youths were all students at the same school. The four engaged in heavy drinking. N.R. testified that when the party began, J.M. told Mr. Terry "don't touch me. I don't want to have sex with you." Report of Proceedings (RP) at 64. Later in the evening, N.R. saw J.M. "on the floor on her back with her legs spread and her pants were down and she was holding onto Jon's head and moaning and Jon was performing oral sex on" her. RP at 64. N.R. further testified that she did not believe the activity was against J.M.'s will, but it surprised her because J.M. had a boyfriend. She also testified that both J.M. and Mr. Terry were drunk.

---

[1] Although described as alternative charges in closing argument, the charging document states different offense dates, more than one year apart, for the two counts. Clerk's Papers at 21; Report of Proceedings at 215-216. However, no challenge to the charging document was raised in the trial court and it is not at issue in this appeal. Since the trial court could have reached the same result through the inferior degree statute, RCW 10.61.003, there arguably was no need to have charged the offense in the alternative.

J.M. testified that she had "a lot" to drink and did not recall much about that night. When N.R. told her that Mr. Terry had performed oral sex on her, she was very surprised, but had no memory of the event. On cross-examination, she testified that she could not remember consenting or not consenting, or anything she may have said while the act was occurring.

The defense recalled N.R. to the stand and she expanded upon her initial testimony. There was heavy drinking and J.M. was "running around kind of hyper" and even began kissing N.R. She also testified that she, Mr. Terry, and J.M. each had at least seven shots of liquor, but that J.M. still seemed to know what she was doing at all times. She said that J.M. got progressively wilder, running around with her shirt off, flashing her breasts, and taking cell phone videos of herself doing so. When she observed J.M. and Mr. Terry, she felt there was no danger and left the couple alone.

Mr. Terry testified in his own defense. He said that he had not planned an encounter with J.M. He had consumed eight to ten shots of liquor, but believed he knew what he was doing at all times. He admitted the sexual contact with J.M., who had laid down and removed her shorts before instructing Mr. Terry to perform oral sex on her. While he was doing so, she pulled him closer, moaned, and encouraged him with words and body movements.

A videotaped police interview of J.M. was played for the judge by the defense. It took issue with some of N.R.'s testimony. In that interview, J.M. stated that N.R. had told her that both she and D.R. had told Mr. Terry to stop, but he did not.

After hearing argument, the trial court found Mr. Terry not guilty of second degree rape, but guilty of third degree rape of J.M. Written findings of fact and conclusions of law were entered. The findings of particular relevance to this appeal state:

9. [N.R.], an independent witness, testified as to the incident during which Respondent [Mr. Terry] performed oral sex on [J.M.]. [N.R.] testified this incident occurred at her father's house. Respondent, [J.M.], [N.R.], and a young man named [D.R.] were present. All of them consumed alcohol, but [J.M.] consumed the most. [N.R.] testified she witnessed [J.M.] consume seven or eight shots of distilled alcohol early on. [J.M.] was "acting crazy,"[2] that she took off her shirt and ran around in her bra, that she made video recordings with her phone of herself "flashing" her breasts, that she repeatedly told Respondent not to touch her, that she did not want to have sex with him, and that she had a boyfriend. [N.R.] testified that [J.M.] did kiss her, and that this surprised her because she had no romantic interest in [J.M.].

10. Shortly after [J.M.] did kiss [N.R.], [N.R.] heard a noise that drew her attention. She crossed the room and saw Respondent performing oral sex on [J.M.]. [J.M.] appeared to be conscious and participating in the sex. [N.R.] testified she was surprised to witness this, as she knew [J.M.] had a boyfriend and [J.M.] had never expressed a romantic interest in Respondent.

11. [J.M.] testified to having very little recollection of the evening [N.R.] described. [J.M.] was not married to Respondent at the time

---

[2] This quotation appears to be a summation of J.M.'s behavior, as N.R.'s testimony did not include the use of this phrase.

of the incident, nor was there a romantic relationship between them. [N.R.] told [J.M.] what had occurred the next day; [J.M.] said she was surprised when she heard what had happened.

Clerk's Papers (CP) at 88. The two conclusions of law of particular interest are:

1. Respondent is not guilty of Rape in the Second Degree.
2. Respondent was not married to [J.M.] and [J.M.'s] lack of consent was clearly expressed. Respondent is guilty of Rape in the Third Degree for his assault on [J.M.]

CP at 89.

The court imposed a standard range disposition. Mr. Terry timely appealed to this court. A panel considered the matter without oral argument.

ANALYSIS

The sole issue presented by this appeal is whether the evidence supported the bench verdict. Properly viewed, it did. The adjudication is affirmed.

Long settled standards govern our review of this contention. "Following a bench trial, appellate review is limited to determining whether substantial evidence supports the findings of fact and, if so, whether the findings support the conclusions of law." *State v. Homan*, 181 Wn.2d 102, 105-106, 330 P.3d 182 (2014) (citing *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106. In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d

192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

This approach is the specific application of the evidentiary sufficiency standard dictated by the Fourteenth Amendment. *Jackson v. Virginia*, 443 U.S. 307, 317-318, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Specifically, *Jackson* stated the test for evidentiary sufficiency under the federal constitution to be "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Washington promptly adopted this standard in *State v. Green*, 94 Wn.2d 216, 221-222, 616 P.2d 628 (1980) (plurality); *id.* at 235 (Utter, C.J., concurring); *accord State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016).

Under *Jackson*, the test is *could* the trier of fact find the element(s) proved. Whether the trial judge *should* have done so is not our concern. For that reason, the arguments Mr. Terry raises go to the weight to be given the testimony by the trier of fact. The trial judge having found the argument wanting, this court is in no position to strike a different balance.

Here, the prosecutor charged Mr. Terry with both second degree rape predicated on a theory that J.M. was incapable of consent due to incapacity or helplessness, RCW 9A.44.050(1)(b), and third degree rape based on the fact that J.M. did not consent and

6

had clearly expressed that lack of consent. *See* RCW 9A.44.060(1)(a). This appeal revolves around the consent element. The other elements (sexual intercourse, no marriage between the parties) are not at issue.

Since the court acquitted on the second degree rape count, the sole issue here is whether there was evidence that J.M. did not consent to the intercourse and clearly expressed that lack of consent. The testimony of N.R. established that element. At the very beginning of the trial, she quoted J.M. as saying just that—Mr. Terry was to stay away from her and she had no interest in being sexually involved with him. The court's finding number 9, quoted above, expressly found that J.M. had repeatedly told Mr. Terry not to touch her and she would not be having sex with him. This evidence amply supports the bench determination that J.M. did not consent to sexual activity.

Emphasizing both his own testimony that J.M. requested and enjoyed their sexual encounter, along with N.R.'s testimony that J.M. seemed to be an active participant, Mr. Terry argues that J.M. changed her mind and consented to the sexual intercourse. The evidence easily would have supported that view of the facts. However, the trial court did not find that to be the case. Although the trial judge *could have* believed Mr. Terry, he did not do so. Instead, he found that J.M. did not consent and communicated that lack of consent to Mr. Terry. Evidence that she may have revoked her refusal did not persuade the trial court. Thus, this court cannot find the facts differently.

A somewhat factually similar case is our decision in *State v. Mares*, 190 Wn. App. 343, 361 P.3d 158 (2015). Mr. Mares began to have sex with the victim while she was asleep. *Id.* at 348. In the month prior to this assault, there were several occasions where the victim had rebuffed Mr. Mares' advances. *Id.* at 347-348. When the victim awoke, she pointed a rifle at Mr. Mares, and told him to leave. *Id.* at 348-349. Mr. Mares was convicted of one count of third degree rape based on the victim's lack of consent. *Id.* at 349-350. On appeal, Mr. Mares argued that the victim did not express her lack of consent until after the sex had begun and she woke up; at that point, Mr. Mares ceased the assault. *Id.* at 356. This court held that RCW 9A.44.060(1)(a) does not require that the victim's clear expression of lack of consent must take place at the time of the sexual intercourse; the victim's responses to Mr. Mares' advances during their entire acquaintance was more than enough evidence from which the jury could find that her lack of consent was clearly expressed by words and conduct. *Id.* at 357.

As in *Mares*, the victim clearly and repeatedly expressed her lack of consent prior to sexual intercourse. That was sufficient to establish the element. The trial court was not compelled to accept Mr. Terry's self-serving version of the events. Even if the victim did respond physically and verbally to Mr. Terry's ministrations, her physical response is not evidence that she *consented* to the action. Whether or not she consciously enjoyed the activity is a different question than whether she agreed to it.

8

No. 34333-2-III
*State v. Terry*

The trial court concluded that she did not agree. Since that determination is supported by the evidence in the record, the fact that Mr. Terry can show that contrary evidence exists is of no moment. Our obligation is to view the evidence in a light most favorable to the bench verdict, not in a light most favorable to the appellant. Properly viewed, the evidence was sufficient.

The adjudication is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

I CONCUR:

_____
Pennell, J.

No. 34333-2-III

LAWRENCE-BERREY, J. (dissenting) — The evidence at trial was constitutionally insufficient to convict Jonathan Terry of third degree rape. For this reason, I dissent.

To convict Mr. Terry of third degree rape, the State was required to prove beyond a reasonable doubt that (1) J.M. did not freely agree to sexual contact with Mr. Terry, and (2) the lack of consent was clearly expressed to Mr. Terry by words or conduct. *State v. Guzman*, 119 Wn. App. 176, 185, 79 P.3d 990 (2003). "'Consent' means that at the time of the act of sexual intercourse or sexual contact, there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." RCW 9A.44.010(7).

The majority correctly notes that the Fourteenth Amendment to the United States Constitution requires a reviewing court to inquire whether the evidence at trial was sufficient to sustain a conviction. The purpose of the sufficiency inquiry is to "'ensure that the trial court fact finder "rationally appl[ied]" the constitutional standard required by the due process clause of the Fourteenth Amendment, which allows for conviction of a criminal offense only upon proof beyond a reasonable doubt.'" *State v. Berg*, 181 Wn.2d 857, 867, 337 P.3d 310 (2014) (alteration in original) (quoting *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 502, 299 P.3d 37 (2013)). This standard "'is designed to

ensure that the defendant's due process right in the trial court was properly observed.'"
*Id.* (quoting *Rattana Keo Phuong*, 174 Wn. App. at 502).

This court reviews a claim of insufficiency de novo. *Id.* Where a conviction is
entered following a jury verdict, we take the State's evidence as true and consider
"'whether, after viewing the evidence most favorable to the State, any rational trier of
fact could have found the essential elements of [the crime] beyond a reasonable doubt.'"
*Id.* (quoting *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980)). However,
where a conviction is entered after a bench trial, we inquire whether sufficient evidence
supports the findings and, if so, whether the findings support the conclusions of law.
*State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014).

Here, the trial court entered only one finding concerning whether J.M.'s words and
conduct during the sexual contact amounted to consent. The trial court found, "[J.M.]
appeared to be conscious and participating in the sex." Clerk's Paper (CP) at 88. We
need not remand for any additional findings because the evidence at trial was undisputed
concerning J.M.'s words and conduct during the sexual contact.

Following J.M.'s statements to Mr. Terry early in the evening, J.M. drank heavily
and her inhibitions were lowered. Her lowered inhibitions are reflected by the
uncontroverted evidence that she ran around her friend's house in her bra, she recorded

herself exposing her breasts, and she began kissing N.R., her female friend. In addition, N.R. testified that J.M. seemed to know what she was doing at all times. Mr. Terry testified that J.M. consented to him performing oral sex on her. His testimony is uncontroverted, is consistent with the trial court's finding noted above, and is consistent with N.R.'s testimony that while Mr. Terry performed oral sex on J.M., J.M. pulled him closer, moaned, and encouraged him with words and body movements. Thus, *at the time of the sexual contact*, the uncontroverted evidence was that J.M. consented both by words and by conduct. At a minimum, J.M.'s words and conduct during the sexual contact caused her earlier statements to be unclear. The trial court did not find otherwise, and the evidence at trial would not support a contrary finding.[1]

The majority relies on *State v. Mares*, 190 Wn. App. 343, 361 P.3d 158 (2015). *Mares* is easily distinguishable. There, the victim did not act in a manner that contradicted her earlier expressed refusal to have sex with the defendant. Here, the uncontroverted evidence was that during the sexual contact, J.M. consented by both words and conduct or, at a minimum, caused her earlier statements to be unclear.

---

[1]The majority alludes to a police video admitted by the defense in which J.M. claims that N.R. and her boyfriend told Mr. Terry to stop while Mr. Terry was performing oral sex. Even if true, this does not negate J.M.'s words and conduct evincing consent.

3

No. 34333-2-III
*State v. Terry*

The majority upholds an unconstitutional conviction by ignoring the uncontroverted evidence. Because the State's evidence was insufficient to convict Mr. Terry of third degree rape, I would reverse his conviction.

_____
Lawrence-Berrey, A.C.J.

4