IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36682-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| D.C.W., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Juvenile D.C.W., identified below as D.W., appeals his

conviction for second degree child molestation. He was accused by his 13-year-old

cousin of touching her breasts and her clothed genitals as the two lay together on a bed in

the early morning hours after a family gathering. Key to the trial court's finding of guilt

was evidence that several months earlier, D.W. asked K.E. if he could touch her breasts

and she refused. D.W. contends that the trial court erred in admitting the evidence of his

prior request and that the evidence was insufficient to establish volitional conduct. We

find no error and that the evidence was sufficient. We affirm.

### FACTS AND PROCEDURAL BACKGROUND

In December 2017, D.W., then 16 years old, was living with his mother and

brother at the home of his maternal grandmother. On New Year's Eve, D.W.'s aunt and

uncle and their two teenaged daughters joined D.W.'s family at the grandmother's home

and stayed overnight. The older of the two girls went to sleep on a couch. The younger,

K.E., then 13 years old, went to bed next to D.W. in a queen-size bed in his room. The

next morning, her older sister found K.E. asleep on the bedroom floor.

A couple of months later K.E. told her older sister that D.W. had touched her that

night. The sister did not press K.E. for details because K.E. was crying and upset, but she

encouraged K.E. to tell their parents what happened. At around the same time, K.E.'s

mother heard that K.E. had confided in a family member about something and questioned

K.E., who then told her about D.W.'s actions. When K.E. disclosed D.W.'s actions to a

school counselor, law enforcement was notified. K.E.'s mother told law enforcement that

K.E. did not want to pursue charges, but the State chose to proceed. Following a forensic

interview of K.E. in July 2018, the State charged D.W. with second degree child

molestation.

At the bench trial of the charge, K.E. testified in her direct examination that as she

and D.W. lay on his bed on New Year's morning, both were lying on their right sides,

with D.W. close behind her, his arm over her waist. She was wearing sweatpants and a shirt over undergarments. At some point, D.W. put his hand under her shirt and her bra, and touched both her breasts. She testified that she did not react, because she was scared. He then put his hand underneath her pants and touched her crotch over her underwear. She told him not to do that and he mumbled and moved his hand away. When his hand began moving under her pants a second time, she got up and went to the bathroom. Upon returning to his room, she took a blanket from the bed and slept on the floor. He mumbled something, but she could not tell what he said.

After having K.E. testify to these events, the prosecutor informed the court of a potential ER 404(b) issue that he planned to raise with K.E. She was excused so that the court could hear from the lawyers. The prosecutor told the court he expected K.E. to testify that before New Year's 2017/18, D.W. once asked K.E. if he could touch her breasts and she refused. The prosecutor argued it was probative of the sexual gratification element of the charge and would be probative should D.W. defend on the basis of mistake or accident. On the issue of probativeness versus prejudice, the prosecutor pointed out that K.E. would be testifying to only conversation, not an act, and it was "certainly not criminal to make that request." Report of Proceedings (RP) at 101.

The defense objected, pointing out that the conversation *could* constitute a crime—communication with a minor for immoral purposes—and argued it was inadmissible propensity evidence. The defense also raised the issue of when the prior act

3

had occurred, arguing that such a request would have less weight if it happened years earlier.

The court recessed to review case law and then heard the State's offer of proof. During the offer, K.E. first testified that she did not recall any such request by D.W., but after her recollection was refreshed by listening to a recording of her forensic interview, she affirmed that D.W. had asked if he could touch her breasts. She said her impression was that it was "like a game, like he was trying to see how far I would go." RP at 116. She could not recall when he made the request, but believed it was several months before New Year's 2017/18.

After hearing additional argument, the trial court found by a preponderance of the evidence that the request to touch K.E.'s breasts had occurred. It explained that the fact that K.E. reported the request in her earliest interview, closest in the time to the event, "tip[ped] the balance." RP at 121. It characterized the purpose of the evidence as probative that D.W.'s acts were done for sexual gratification or D.W.'s "lustful disposition" toward his cousin. *Id.* In discussing the balancing of probative value and prejudice, the court cited cases in which remoteness in time had been a concern and stated, "Here, the alleged conduct being closer in time reduces the risk of unfair prejudice." RP at 122. The court then stated, "I will receive the evidence in the first instance. Each party is able to argue as to its underlying probative value. This is a gateway determination which allows each party to argue how I should receive it." *Id.*

4

In K.E.'s continued testimony, the prosecutor asked if D.W.'s actions "seem[ed] to be a natural occurrence of [D.W.] adjusting in his sleep" and she said no, because "normal like bed things like blankets and pillows, like it's just not the same as a body, you know. Like you would have to be aware of like where your hands are going." RP at 125. K.E. was unable to explain further why she thought D.W. was awake, testifying, "[T]here was just a feeling." *Id.*

In cross-examination, K.E. testified that she could not recall whether, when D.W. put his hand in her pants, he or she removed his hand. She only recalled that she told D.W. to move his hand and "his hand got moved." RP at 128. She conceded that given the time of morning, everyone was half asleep. She agreed that the first time D.W. put his hand down her pants she whispered to ask what he was doing, and he responded with a mumble or a noise and went back to sleep, but she testified further that he "obviously . . . understood cause he moved his arm." RP at 130. K.E. said she did not know if D.W.'s eyes were open because he was behind her. She acknowledged she could not tell if D.W. was awake.

In the defense case, D.W. testified that he was not sexually attracted to K.E. He testified that he had no recollection of anything K.E. had described; that the last thing he remembered on New Year's night was turning off his stereo and hopping into bed, and the first thing he remembered the next day was waking up around 9:00 a.m. He testified that he usually sleeps with a body pillow, and his explanation for any touching that

5

happened was that "it was probably me just like trying to cuddle up to my body pillow that wasn't in its normal spot." RP at 145.

After hearing closing argument, the court observed that the evidence supported alternate explanations of D.W.'s contact below K.E.'s waist and whether she or he moved his hand. But it found that the touching of her breasts, under two layers of clothing, given D.W.'s prior request to touch her breasts, persuaded it beyond a reasonable doubt of his guilt. The court stated it would not have been persuaded beyond a reasonable doubt of D.W.'s guilt without the evidence of his earlier request to touch K.E.'s breasts.

In findings of fact and conclusions of law, the trial court said it had admitted the evidence of D.W.'s prior request "for the non-propensity purposes of showing: 1) the Respondent's intent for sexual gratification with females, generally, 2) for the lustful disposition of the Respondent towards [K.E.], specifically, and 3) to counter the implication that this was an accidental, unknowing, or otherwise non-volitional act." Clerk's Papers (CP) at 14-15. D.W. appeals.

## ANALYSIS

I.  EVIDENCE OF THE 2017 REQUEST TO TOUCH K.E.'S BREASTS WAS ADMISSIBLE UNDER ER 404(b)

ER 404(b) prohibits evidence of past misdeeds to prove a defendant's criminal propensity. *State v. Nelson*, 131 Wn. App. 108, 115, 125 P.3d 1008 (2006). The evidence may be admitted for other purposes, and the rule itself identifies as permitted

6

purposes "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). Such evidence is not admissible to prove the charged conduct was not accidental unless a defendant has raised accident as a defense. *State v. Bowen*, 48 Wn. App. 187, 193-94, 738 P.2d 316 (1987), *overruled on other grounds by State v. Lough*, 125 Wn.2d 847, 889 P.2d 487 (1995). Evidence of prior bad acts is presumed inadmissible, and any doubts as to admissibility are resolved in favor of exclusion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

Before the trial court could admit evidence of the request under ER 404(b), it was required to (1) find by a preponderance of the evidence that the prior misconduct occurred, (2) identify the purpose for admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value of the evidence against its prejudicial effect. *State v. Fisher*, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). This analysis should be conducted on the record. *State v. Asaeli*, 150 Wn. App. 543, 576 n.34, 208 P.3d 1136 (2009). The requirement for on the record balancing facilitates appellate review, and ensures that the judge gives thoughtful consideration to the issue. *State v. Pirtle*, 127 Wn.2d 628, 651, 904 P.2d 245 (1995). Admission of ER 404(b) evidence is reviewed for an abuse of discretion. *State v. Freeburg*, 105 Wn. App. 492, 497, 20 P.3d 984 (2001).

"If, despite the requirement for an explicit record, the trial court fails to document its ER 404(b) analysis, we may review its decision de novo." *State v. Riley*, ___ Wn.

7

App. 2d ___, 460 P.3d 184, 189 (2020). Appellate courts presume a "judge follow[s] the law and consider[s] evidence solely for proper purposes," reducing the danger of prejudice in a bench trial. *State v. Disney*, 199 Wn. App. 422, 432, 398 P.3d 1218 (2017).

D.W. argues that the trial court did not conduct an on the record weighing of probative value against undue prejudice. It did, however. *See* RP at 121-22. The court cited *State v. Ray*, 116 Wn.2d 531, 806 P.2d 1220 (1991) and *State v. Guzman*, 119 Wn. App. 176, 182, 79 P.3d 990 (2003), both cases in which trial courts were found not to abuse their discretion by admitting evidence of a defendant's lustful acts toward an eventual incest or rape victim that occurred 10 and 6 years, respectively, before the crime on trial. When D.W. had argued against the admissibility of his request, the defense had highlighted concern about timing, arguing that a request taking place "six years prior, I don't think it has any weight on intent at the time this happened." RP at 102-03. In response to that concern, the trial court observed, "Here, the alleged conduct being closer in time reduces the risk of unfair prejudice." RP at 122.

In explaining its balancing, the court acknowledged that because the defense had not yet made an opening statement or presented evidence, it was making a "gateway determination," with the full probative value of the evidence to be assessed later in the bench trial. *Id.* Following the defense case, it was apparent that evidence of the 2017

8

request was relevant to D.W.'s testimony that he was not attracted to K.E. and that whatever touching occurred was accidental, unknowing, or otherwise nonvolitional.

We find no abuse of discretion based on the record made by the trial court. Alternatively, if the trial court's ER 403 analysis on the record was lacking, the record is sufficient for appellate review and under a de novo standard the evidence was admissible. The evidence was prejudicial insofar as it was probative, but that is not the prejudice with which we are concerned. It presented far less risk of *unfair* prejudice than cases such as *Ray* and *Guzman*, where the prior bad acts included prior sexual touching of the victims. *Ray*, 116 Wn.2d at 535; *Guzman*, 119 Wn. App. at 180. As K.E. testified, she thought D.W.'s request to touch her breasts "was weird, he's a cousin, but I didn't really care. Like it didn't mean anything." RP at 116. The significance of the evidence was that D.W. had a sexual interest in K.E., supporting an inference of intentional conduct for the purpose of sexual gratification.

Reviewed de novo, any risk that this evidence was used for improper propensity purposes was essentially nonexistent given the nature of the prior misconduct and the fact that the case was tried to the bench. *Disney,* 199 Wn. App. at 432.

II.     SUBSTANTIAL EVIDENCE SUPPORTS THE COURT'S CHALLENGED FINDINGS, WHICH
         IN TURN SUPPORT ITS CONCLUSIONS OF LAW

D.W.'s remaining assignments of error challenge the sufficiency of the evidence to support its findings of fact 10 and 14, and the sufficiency of the findings to support two

9

conclusions of law: finding 1, which D.W. contends (and we agree) is a conclusion of law,[1] and conclusion of law 4.

In reviewing a sufficiency challenge to a juvenile court adjudication, we must decide whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law. *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). We treat unchallenged findings of fact as verities on appeal. *Id.* To determine the sufficiency of the evidence, we view it in the light most favorable to the State, asking whether a rational trier of fact could find the elements of the offense beyond a reasonable doubt. *Id.*

The challenged findings of fact state:

10.     The Respondent's touching of [K.E.'s bare breast and genital area] was done for the sexual gratification of the Respondent.

. . . .

14.     The Respondent's acts were done with volition.

CP at 14.

D.W. argues that the evidence was insufficient to establish that he was awake and aware of what he was doing, thereby preventing any finding that his actions were done for sexual gratification. K.E. testified that she could not see whether his eyes were open because he was behind her, and that he mumbled rather than spoke. But she also testified

---

[1] A mislabeled finding of fact or conclusion of law is reviewed for what it really is. *State v. Conway*, 8 Wn. App. 2d 538, 552 n.8, 438 P.3d 1235 (2019).

that his actions did not seem to be a natural occurrence of him adjusting in his sleep; that while she could not explain it, she had a feeling he was aware; that he ran his hand up her stomach and underneath her bra and twice put his hand in her pants; that when she told him to move his hand, his hand got moved; that his mumbling was not random but happened after she said something; and when *she* spoke "obviously he understood [be]cause he moved his arm." RP at 130. This evidence, and the evidence that a few months earlier D.W. had asked if he could touch K.E.'s breasts, is substantial evidence supporting findings 10 and 14.

D.W. challenges the conclusions that D.W. committed child molestation in the second degree during the charging period (finding of fact 1) and that D.W. was guilty beyond a reasonable doubt of committing the offense (conclusion of law 4). "A person is guilty of child molestation in the second degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.086. "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010. All elements of the crime are included in the trial court's findings.

No. 36682-1-III
*State v. D.C.W.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Korsmo, A.C.J.