IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34969-1-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MARSHALL DISNEY, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Marshall Disney appeals from his criminal conviction for malicious prosecution, arguing that the evidence fails to support the bench verdict and that the trial judge erred in taking judicial notice of a chair in the courtroom. We affirm.

FACTS

In two earlier case files, Mr. Disney was charged in the Pacific County Superior Court with felony offenses including attempted first degree burglary. Represented by attorney Nancy McAllister, he appeared for arraignment before the Honorable Michael Sullivan on November 13, 2015. Two weeks later, Mr. Disney filed a written Prison Rape Elimination Act (PREA) of 2003, 42 U.S.C. §§ 15601-15609, complaint against Ms. McAllister. He alleged that during the arraignment hearing, counsel had reached under the table and rubbed the inside of his leg near his groin.

Deputy Wiegardt, with the Pacific County Sheriff's Department, investigated Mr. Disney's complaint. The deputy watched the courtroom surveillance video, but did not observe any touching and saw no evidence that a crime had occurred. He informed Mr. Disney that no crime had occurred. Nevertheless, Mr. Disney maintained the allegation made in his PREA complaint, and added that he believed Ms. McAllister had intentionally sexually touched him as a ploy to butter him up to make him accept a plea deal. Mr. Disney opined that perhaps she had done it to "truck [Mr. Disney] off for whatever deal/reason . . . I mean, she is a public defender." Clerk's Paper (CP) at 32.

Pacific County Deputy Prosecutor Mark McClain sent Disney a letter stating that there was no evidence of a crime. Following receipt of this notification, Mr. Disney repeated his claim of sexual assault against Ms. McAllister to four additional agencies.[1] Following these renewed allegations, the Pacific County prosecutor charged Mr. Disney with one count of malicious prosecution in violation of RCW 9.62.010.[2]

At the malicious prosecution trial, Ms. McAllister testified that she did not touch Mr. Disney's leg or the inside of his thigh. A criminal attorney for 22 years, Ms. McAllister denied the allegations and agreed that there was no probable cause for Mr.

---

[1] Mr. Disney contacted the Washington State Patrol, Crisis Support Network, the Department of Corrections, the Pacific County Sheriff, and Deputy Weigardt, who had initially investigated the allegation.

[2] Mr. Disney sent yet another letter regarding his allegations to Deputy Wiegardt just 11 days before his malicious prosecution trial began.

2

Disney's complaint. Jonathan Meyer, Lewis County Prosecuting Attorney, also provided

his expert opinion that there was no probable cause to support Mr. Disney's claim.

Officer Wirkkala testified that she had been assigned to monitor Mr. Disney's

movements at the November 13, 2015 plea hearing and stood approximately 10 feet away

from him. She did not observe Ms. McAllister's hand going into Mr. Disney's lap and

saw no reaction from Mr. Disney to indicate anything unusual occurred.

At the request of the prosecutor, and without objection by defense, the judge went

and stood where Officer Wirkkala had stood during the November 13, 2015 hearing to

observe Mr. Disney and his counsel, both seated in the same seats as during the

November hearing. The court advised the parties that it was not acting as a witness.

When defense counsel attempted to point out to the court the difficulties Officer

Wirkkala would have had in seeing Ms. McAllister's hands, the following exchange

between defense counsel and the court took place:

> DEFENSE: I would ask the Court to observe that so far as I can tell from
> this point, the Court cannot see my left hand if I were to—
>
> THE COURT: You know, I'm not going to be a witness. I'm a prop. I'm
> not being called as a witness. You can make whatever objections you can
> think you can make later in argument or by asking this witness questions.
> I'm not a witness.

Report of Proceedings (RP) at 33.[3]

---

[3] Defense counsel previously had asked the same question of Officer Wirkkala.

In closing argument, defense counsel argued that it would have been difficult for the deputy to see the parties clearly. He asked the court to recall what it had observed from standing in the deputy's location:

> [DEFENSE]: We would ask the Court to recall that it seemed highly unlikely that my left hand sitting in the same position as Ms. McAllister could have been visible from that vantage point.
>
> [PROSECUTOR]: Objection. That's not in evidence. In fact, what the Court said is that "I'm not going to be a witness in the case." So the Court specifically just got to the vantage point where it was so the Court could see that, not that the Court could or couldn't see Mr. Penoyar's left hand.
>
> THE COURT: Here's how the Court understood its role in being asked to stand over there by—well, by the exit-entrance door, is that I considered it no different than if I was shown a photo of that, from that position, except I—no one took a photo. So instead of taking a photo, I was asked to go stand over there and look. Now, what I saw is what I saw. But it's no different—there's just no exhibit for me to look at in terms of here's a picture of what it looks like from that vantage point. So that's how I consider it, as though it was a photo that—what it would have looked like, photo. I don't know how to tell you what I saw, because I saw what I saw. So I don't know. I don't know how much weight I'm going to give to that because of that particular uniqueness. I've never been asked to do that before. But anyway, I don't know how else to look at it other than though it's as someone took a picture, they showed it to me here and I said, "Oh, I see what it looks like from that vantage point." You can argue, well, you're taller, you're shorter and all that. That's fine. But anyway, that's how I take that to be. So I'm going to sustain the objection.

RP at 68-69.

The court found Mr. Disney guilty of malicious prosecution. In his discussion of Officer Wirkkala's testimony, the judge wrote:

> The corrections officer providing security testified that she would have noticed the attorney's hand move across the space between the Defendant's

4

chair and his attorney's chair. **The court takes judicial notice that each chair is a non-padded chair with arm rests and a person's body can be see [sic] through the slats of the chair's back and side arm rests.** The corrections officer testified that she would have noticed if the attorney had reached over and touched the defendant in his inner thigh area near his groin. She testified that this would have been out of the ordinary and, therefore, would have observed it.

CP at 25 (emphasis added). The court concluded that Mr. Disney's testimony established

his frustration with the court system, which led him to accuse his attorney. The actions

"were intentionally done to annoy or vex his attorney without any justifiable basis in

fact." CP at 28.

Mr. Disney timely appealed from the standard range sentence imposed by the

court.

## ANALYSIS

This appeal presents two claims. First, Mr. Disney argues the evidence does not

support the "lack of probable cause" element of the offense. Second, he argues the trial

court erred in taking judicial notice of the chair in the courtroom. We address those two

contentions in the order listed.

*Sufficiency of the Evidence*

The standards governing this challenge have long been settled. "Following a

bench trial, appellate review is limited to determining whether substantial evidence

supports the findings of fact and, if so, whether the findings support the conclusions of

law." *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014) (*citing State v.*

5

*Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005)). "'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." *Id.* at 106. In reviewing insufficiency claims, the appellant necessarily admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Finally, this court must defer to the finder of fact in resolving conflicting evidence and credibility determinations. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

This approach is the specific application of the evidentiary sufficiency standard dictated by the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Specifically, *Jackson* stated the test for evidentiary sufficiency under the federal constitution to be "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Washington promptly adopted this standard in *State v. Green*, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980) (plurality); *Id.* at 235 (Utter, C.J., concurring). *Accord State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). Under *Jackson*, the test is *could* the trier-of-fact find the element(s) proven. Whether the trial judge *should* have done so is not our concern.

Malicious prosecution occurs when people "maliciously and without probable cause therefor, cause or attempt to cause another to be arrested or proceeded against for

6

any crime of which he or she is innocent." RCW 9.62.010. The lack of probable cause

must be proved as an essential element of a claim for malicious prosecution. *Olsen v.*

*Fullner*, 29 Wn. App. 676, 678, 630 P.2d 492 (1981). In a civil action for malicious

prosecution, the dismissal of a criminal case is prima facie evidence of malicious

prosecution. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 498, 125 P.2d 681

(1942).

Mr. Disney argues here that the "without probable cause" element is not supported

by substantial evidence. He argues that his complaints were sufficient to establish

probable cause. His argument would render malicious prosecution actions—whether

civil or criminal—effectively unavailable. The legislature has authorized this crime

despite the fact that the defendant could always claim that his original complaint

established probable cause.

Lack of probable cause is an objective determination, not a subjective one. This

point was clarified in a civil malicious prosecution action, *Bender v. City of Seattle*, 99

Wn.2d 582, 664 P.2d 492 (1983). There, the city of Seattle defended a malicious

prosecution claim by asserting that the county's deputy prosecuting attorneys had found

probable cause before filing charges. Noting an earlier decision, the court stated that "if a

factual issue as to probable cause or malice exists, the question must be submitted to the

jury." *Id.* at 594. The court also noted that its earlier decision "seems to imply that

7

probable cause is somehow a subjective determination to be made by a prosecutor." *Id.*
at 597. It rejected that approach:

> Probable cause, however, must be measured by an *objective* standard:
>
> Probable cause exists where the facts and circumstances within the
> arresting officer's knowledge and of which he has reasonably trustworthy
> information are sufficient in themselves to warrant a *man of reasonable
> caution* in a belief that an offense has been or is being committed.
>
> (Citations omitted. Italics ours.) *State v. Gluck*, 83 Wn.2d 424, 426-27,
> 518 P.2d 703 (1974). This objective standard is one that can be applied by
> a properly instructed jury as well as a judge. . . . The City suggests that
> since several deputy prosecutors found the existence of probable cause, this
> somehow settles the question. We disagree. The subjective views of those
> deputy prosecutors on the question of probable cause merely constitute
> evidence which could be considered by the jury along with any other
> evidence on the existence or nonexistence of probable cause.

*Id.*

Similarly here, we hold that a defendant's belief in the righteousness of his
complaint is evidence that should be considered by the trier-of-fact in determining
whether probable cause was absent. That subjective belief, however, is not dispositive.
The State was permitted to put forth its evidence that probable cause was lacking through
the testimony of the deputy sheriff and Ms. McAllister, as well as the videotape of the
proceedings. The trial judge was permitted to weigh that evidence against the
defendant's testimony.

The evidence was sufficient for the trial judge to conclude, as he did, that each element of the crime of malicious prosecution was present. Accordingly, the evidence supported the bench verdict.

*Judicial Notice*

Mr. Disney also argues that the trial judge erroneously took judicial notice of what could be seen through the chair. Whether or not the judge's actions truly constituted "judicial notice," we do not believe that the trial judge erred in considering the chair sitting in his courtroom.

Several different standards govern our review of this contention. An appellate court will review an issue raised for the first time on appeal only if the issue constitutes manifest error affecting a constitutional right. RAP 2.5(a)(3). To be manifest, the appellant must show that the asserted error had practical and identifiable consequences at trial. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011).

Washington judges are permitted to take judicial notice of "adjudicative facts." ER 201(a). Such a fact "must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." ER 201(b). The court can take judicial notice on its own and at any stage of proceedings. ER 201(c), (f). A trial court's ruling on a question of taking

9

judicial notice presents a question of law reviewed de novo. *State v. Kunze*, 97 Wn. App. 832, 988 P.2d 977 (1999).

Courts also recognize judges do not operate in the courtroom with a blank mind.

> We do not believe the legislature intended that judges leave their knowledge and understanding of the world behind and enter the courtroom with blank minds. Judges are not expected to leave their common sense behind. Nor do we believe the legislature expected judges to hold hearings on whether fire is hot or water is wet. We prize judges for their knowledge, most of which is obtained outside of the courtroom. Within the statutory and constitutional guidelines, judges may exercise their discretion to give a fair and just sentence.

*In re Estate of Hayes*, 185 Wn. App. 567, 599-600, 342 P.3d 1161 (2015) (quoting *State v. Grayson*, 154 Wn.2d 333, 339, 111 P.3d 1183 (2005)). In a similar vein, it has been noted that when "the judge is a trier of fact, illustrative comments phrased in the first person are not improper unless they evidence bias, prejudice, or other impropriety." *Fernando v. Nieswandt*, 87 Wn. App. 103, 109, 940 P.2d 1380 (1997).

Trial judges have great discretion in the admission of evidence at trial and decisions to admit or exclude evidence will be overturned only for manifest abuse of discretion. *State v. Luvene*, 127 Wn.2d 690, 706-07, 903 P.2d 960 (1995). Discretion is abused where it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). A court also abuses its discretion when it applies the wrong legal standard. *State v. Rafay*, 167 Wn.2d 644, 655, 222 P.3d 86 (2009). A corollary rule is that in a bench trial, we will presume that the

10

judge followed the law and considered evidence solely for proper purposes. *E.g., State v. Adams*, 91 Wn.2d 86, 93, 586 P.2d 1168 (1978); *State v. Miles*, 77 Wn.2d 593, 601, 464 P.2d 723 (1970); *State v. Bell*, 59 Wn.2d 338, 360, 368 P.2d 177 (1962).

With those overlapping observations in mind, we turn to the problem at hand. Although Mr. Disney takes the trial judge at his word and treats this as a question of judicial notice, the prosecutor argues that the judge was merely describing the results of his observations. In a sense, the prosecutor is likening the process to a view of a premises by a jury. CrR 6.9. While we have some appreciation for that position, the major problems with the argument are that (1) the trial judge indicated he was not a witness and declined to consider defense counsel's question concerning the ability to observe counsel's hand from the deputy's position, and (2) the fact that the prosecutor successfully objected to the defense asking the judge in closing argument to consider the ability to observe counsel's hand. In short, the trial court appeared to treat this matter as one of judicial notice. Moreover, a trial judge can, we believe, take judicial notice of the furniture in his courtroom.

With those observations aside, no matter which way the problem is classified, it does not present a question of manifest constitutional error that can be considered for the first time on appeal. The defense did not object to the judge viewing the scene from the location the deputy had occupied. This was an evidentiary question, not one of manifest constitutional law. If the defense believed that the trial court erred in considering the

11

matter one of judicial notice in accordance with ER 201, it was incumbent on the defense to object to the verdict on that basis and call the matter to the judge's attention.[4] Accordingly, we conclude the issue was not preserved for our review.

*Appellate Costs*

Mr. Disney also asks that we waive appellate costs. Because this matter came to us on a transfer from Division Two, it was not subject to our General Order concerning waiver of appellate costs. Under these circumstances, we exercise our discretion and decline to consider the request without prejudice to Mr. Disney renewing the issue via objection in the event the prosecutor files a cost bill. Our commissioner would then consider the question, along with the parties' argument on this issue in their respective briefs, in accordance with the terms of recently amended RAP 14.1.

Affirmed.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

---

[4] It is doubtful that the issue was of such significance that reversible error existed given the centrality of the videotape to the current proceedings and the testimony of Ms. McAllister and Officer Wirkkala.