# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 53925-0-II |
| Respondent, | |
| v. | |
| AARON JOSEPH OWENS, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Aaron Joseph Owens is required to register as a sex offender with the local sheriff's office, and he registered that he was living at his father's address. Sergeant Cameron Simper visited Owens's father's address, and Owens's father told Simper that his son was not living there. The State charged Owens with failure to register as a sex offender.

Owens proceeded to a bench trial where Simper repeated Owens's father's statement that Owens was not living with him. The State referred to this statement several times in closing argument, and defense counsel did not object or seek to limit consideration of this statement during the trial. In a posttrial motion for arrest of judgment, Owens argued that the trial court improperly considered this hearsay testimony as substantive evidence of Owens's guilt, rather than for the limited purpose of impeaching Owens's father's trial testimony. Owens argued that without this statement, the State failed to prove that Owens was not living at his registered address. The trial court rejected both arguments.

On appeal, both parties agree that the statement was hearsay, and the State does not dispute that the trial court considered the statement as substantive evidence. Instead, the State argues that

Owens waived the issue by failing to object during trial. We hold that the trial court improperly relied on Simper's hearsay testimony as substantive evidence, but we need not reach the issue of waiver because, viewing the evidence in the light most favorable to the State, the evidence was sufficient to sustain Owens's conviction without the hearsay testimony. We affirm.

FACTS

Owens is required to register as a sex offender. In May 2018, he updated his address with the Thurston County Sheriff's Office and registered at his father's address. On June 21, 2018, Simper went to this address to verify that Owens was living there. Owens's father, Thomas Owens,[1] answered the door and told Simper that "he hadn't seen [Owens] in months and that [Owens] didn't live at the house." Clerk's Papers (CP) at 2. Simper was unable to contact Owens, and a warrant was issued for his arrest. The State charged Owens with failure to register as a sex offender in violation of RCW 9A.44.132(1)(a).

A.     Trial

Owens waived his right to a jury trial and proceeded to a bench trial. Owens did not contest that he was required to register as a sex offender or that he was registered at his father's address during the relevant time period. The only dispute at trial was whether Owens was actually living at his registered address. His defense was that "statements law enforcement attributed to Thomas Owens were either misunderstood or misrepresented." CP at 10.

Thomas testified at trial. At first, Thomas recalled Simper coming to his home in summer 2018 and asking, "[W]as Aaron Joseph there?" Verbatim Report of Proceedings (VRP) (June 18,

---

[1] Because Thomas Owens shares a last name with Aaron Owens, we refer to Aaron Owens as "Owens," and we use Thomas's first name.

2019) at 12. Thomas testified that he responded, "'Not at this time.'" *Id.*; *see also id.* at 13-14 (repeating this testimony two more times). Thomas denied telling law enforcement that Owens was not living at the house.

On cross-examination, however, Thomas became confused about when the encounter with Simper occurred and gave conflicting testimony about whether Owens lived at his home when Simper visited. Thomas insisted, "Nobody came to my house a year ago, that I can remember." *Id.* at 22. Thomas testified that during summer 2018, his son was "in and out of the house." *Id.* at 21. He said that Owens had a room at his house, that Owens received mail there, and that Owens's children lived there. But at the end of his testimony, Thomas said that "when [Owens] wasn't living with [Thomas], he had his own place, and that was right across the street." *Id.* at 22. On redirect, Thomas said that "as far as telling you when [Owens] was there and when he wasn't, I couldn't, not a year ago." *Id.* at 23. Then he stated that Owens was living across the street from him "[t]he whole time," meaning "[o]ver a year." *Id.* However, he also stated that Owens was living with him in June and July 2018.

Simper testified about going to the address where Owens was registered and speaking with Thomas. Simper testified that he did not see Owens at the residence and that Thomas "said that Aaron Owens was his son and that he did not live there." *Id.* at 32. On cross-examination, Simper confirmed that he was not taking notes, recording, or wearing a body camera during this encounter. But in response to a question of whether it was "possible [Thomas] said he hadn't *seen* [Owens]," Simper said, "No, I recall him saying [Owens] didn't live there." *Id.* at 35-36 (emphasis added).

Owens also testified. He recalled that during summer 2018, due to his and his father's work schedules, the two did not see one another very often. In addition, Owens sometimes needed to

travel for work and he spent nights in hotels. Sometimes he spent all night working, and sometimes he slept in his car. But Owens testified that he moved into his father's house in May 2018 and that he was living there in June and July 2018. He also stated that his father had been experiencing difficulty with his memory.

In closing argument, the State argued that it had shown Owens was not living at the address where he was registered. In support of this argument, the State referred to Thomas's testimony that Owens lived across the street and reminded the court that "when the police officer came to his house, [Thomas] said he hadn't seen [Owens] in [a while]." *Id.* at 87. The State argued it was "unlikely" that Owens and his four children would have been living in Thomas's house "and yet [Thomas] would have no recollection of having seen [Owens]." *Id.* at 87-88. The State repeated, "Thomas Owens said his son lived across the street and that he hadn't seen his son in a while when the police came on June 21st and asked him." *Id.* at 88. It concluded, "[W]hen the defendant's father on June 21st, 2018 said he hadn't seen the defendant and the defendant didn't live there, it meant that, that the defendant didn't live there." *Id.* at 89. Defense counsel did not object.

In defense counsel's closing argument, she referenced the "statement made by Mr. Thomas Owens, my client's father, that he hadn't seen [Owens] in months," and she noted that "[t]his would have been through *the impeachment testimony* of Sergeant Simper." *Id.* (emphasis added). But then defense counsel argued that Simper's recollection of Thomas's statement could have been faulty and that this statement alone was not enough to convict beyond a reasonable doubt because it was not corroborated. Counsel argued, "One person's statement, even if we take it at face value, should not be proof beyond a reasonable doubt." *Id.* at 91. She did not expressly argue that Simper's testimony about Thomas's statement could not be used as substantive evidence.

When the trial court issued its findings of fact, it included a finding that "Sergeant Simper . . . contacted Thomas Owens who reported that his son Aaron Owens did not live with him." CP at 16. The trial court found that Thomas's testimony was not credible, and it noted on the record that Thomas "seemed to have little knowledge of the defendant's whereabouts during the time associated with this particular charge." VRP (June 18, 2019) at 97. It further found that "Sergeant Simper's testimony was credible, including where he relayed that Thomas Owens had told him that Aaron Owens did not live at [his address]." CP at 16. Finally, the trial court found that "Aaron Owens's testimony was credible at times, but the testimony about his level of contact with his father and his level of contact with [his father's] address was not credible." *Id.* The trial court concluded that Owens was not residing at the address at which he was registered during the relevant time period. It found Owens guilty of failure to register as a sex offender.

B.      Motion for Arrest of Judgment

Just after the trial court announced its decision, defense counsel asked to make a record because it was "brought to [her] attention that there may be an evidentiary basis to ask the court to reconsider its ruling." VRP (June 18, 2019) at 104. She explained that "it's the notion of whether or not the court can consider Sergeant Simper's statement that Mr. Thomas [Owens] told him that Mr. Aaron Owens didn't live there as substantive evidence." *Id.* at 105. Defense counsel explained that she intended to bring a posttrial motion.

Owens then filed a motion for arrest of judgment, arguing that the trial court "improperly considered testimony regarding Mr. Thomas Owens' prior inconsistent statement as substantive evidence" and that without this statement, there was insufficient evidence to sustain a conviction. CP at 18. Owens argued, "Absent Sergeant [Simper's] testimony regarding Thomas Owens' prior

inconsistent statement, the State presented no evidence that Aaron Owens did not live at [his father's address]." CP at 19.

The State responded that Simper's statement, "while concededly hearsay, was not objected to and therefore may be considered for whatever probative value the trier of fact determines it has." CP at 21-22. The State further argued that even without considering this statement as substantive evidence, there was sufficient evidence to support Owens's conviction. At a hearing on the motion, the State pointed the trial court to other testimony on which it could base its ruling: "Thomas Owens mentioned at one point during his testimony . . . that his son lived across the street from his house[,] . . . [and] you are entitled to rely on [Simper's] personal observations when he did a home visit, that he did not see Mr. Owens residing at the address at that time." VRP (Aug. 18, 2019) at 9-10. The State also argued that if the trial court found Owens's testimony was not credible, then it could infer Owens "did not live at the address he stated that he lived at." *Id.* at 10.

The trial court denied Owens's motion for arrest of judgment, finding "there are several bases for the [c]ourt's decision." *Id.* The trial court also explained that it was "essentially overruling" the defense's objection, stating, "There was no objection at the time of the testimony at trial for the [c]ourt to rule upon. And so because of that, the standard is a bit higher." *Id.* The trial court sentenced Owens to four months of partial confinement and authorized him for work release. The trial court imposed 12 months of community custody.

Owens appeals his conviction.

## ANALYSIS

Owens argues that the trial court erred by considering Simper's hearsay testimony as substantive evidence of guilt. The State concedes that this testimony was hearsay but argues that

it could be considered as substantive evidence because Owens waived any challenge by failing to timely object. The trial court improperly relied on Simper's hearsay testimony as substantive evidence, but we need not reach the issue of whether Owens waived his objection because the State presented sufficient evidence even without the hearsay testimony.

## I. PROPER USE OF HEARSAY TESTIMONY

A.    Impeachment Evidence

The Rules of Evidence define "'[h]earsay'" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). Hearsay evidence is generally inadmissible. ER 802. The prohibition on hearsay serves "to exclude untrustworthy evidence which may prejudice a litigant's cause or defense." *State v. Picard*, 90 Wn. App. 890, 899, 954 P.2d 336 (1998).

Where prior inconsistent statements by a witness were "given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition," those statements are not hearsay and are admissible as substantive evidence. ER 801(d)(1)(i). In contrast, where prior inconsistent statements by a witness were not given under oath, those statements may be admissible for the limited purpose of impeaching the witness's credibility. ER 607, 613(b); *see also State v. Garland*, 169 Wn. App. 869, 886, 282 P.3d 1137 (2012) ("Prior inconsistent statements generally do not constitute substantive evidence."). Impeachment evidence is evidence "offered solely to show the witness is not truthful," and it "may not be used to argue . . . that the facts contained in the prior statement are substantively true." *State v. Burke*, 163 Wn.2d 204, 219, 181 P.3d 1 (2008).

"[T]he State may not use impeachment as a guise for submitting . . . substantive evidence that would otherwise be inadmissible." *State v. Clinkenbeard*, 130 Wn. App. 552, 569-70, 123 P.3d 872 (2005). In *Clinkenbeard*, a witness's prior inconsistent statements could properly be used "for impeachment purposes only," but the State relied on these statements in closing argument, and Division Three held that "this was an improper use of impeachment testimony as substantive evidence." *Id.* at 570-71.

Here, the State offered the following testimony by Simper: "Mr. [Thomas] Owens said that Aaron Owens was his son and that he did not live there." VRP (June 18, 2019) at 32. The State repeated this statement, relying on it for the truth of the matter asserted, three times during its closing argument. *See, e.g.*, *id.* at 89 ("[W]hen the defendant's father on June 21st, 2018 said he hadn't seen the defendant and the defendant didn't live there, it meant that, that the defendant didn't live there."). The State concedes that Thomas's statement to Simper was hearsay, and the State concedes that the statement should have been restricted to serving as impeachment evidence. We agree and accept the State's concessions on these points.

B.    Bench Trial

In a bench trial, the trial court "sits as both the arbiter of law and the finder of fact." *State v. Blair*, 3 Wn. App. 2d 343, 353, 415 P.3d 1232 (2018). When evidence is admitted "in a bench trial, we will presume that the judge followed the law and considered evidence solely for proper purposes." *State v. Disney*, 199 Wn. App. 422, 432, 398 P.3d 1218 (2017). In a bench trial, "'it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not.'" *State v. Read*, 147 Wn.2d 238, 245, 53 P.3d 26 (2002) (quoting *Builders Steel Co. v. Comm'r of Internal Revenue*, 179 F.2d 377, 379 (8th Cir. 1950)). But the

presumption that the trial court did not consider inadmissible evidence may be rebutted where the defendant shows that "the verdict is not supported by sufficient admissible evidence, or the trial court relied on the inadmissible evidence to make essential findings that it otherwise would not have made." *Id.* at 245-46; *see also State v. Gower*, 179 Wn.2d 851, 855-56, 321 P.3d 1178 (2014).

Here, Owens correctly points out that the trial court included references to Thomas's hearsay statement in its findings of fact. The trial court found that Simper "contacted Thomas Owens who reported that his son Aaron Owens did not live with him," and it further found that "Sergeant Simper's testimony was credible, including where he relayed that Thomas Owens had told him that Aaron Owens did not live at [his registered address]." CP at 16. The State does not contest that the trial court relied on Thomas's statement as substantive evidence to make essential findings it otherwise would not have made. Thus, Owens has shown that the trial court improperly relied on Thomas's statement as substantive evidence, triggering the second of the *Read* court's options for overcoming the normal bench trial presumption.

The State argues, however, that Owens waived any objection to the trial court's reliance on Thomas's statement as substantive evidence because counsel failed to object or bring the issue to the trial court's attention during trial. We need not reach this issue because, as discussed below, sufficient evidence supports Owens's conviction, even absent consideration of Thomas's statement to Simper.

## II. SUFFICIENCY OF THE EVIDENCE

Owens argues that without Simper's hearsay testimony, the State's evidence was insufficient to prove Owens was not living at his father's address. We disagree.

CrR 7.4(a)(3) provides that a judgment "may be arrested" based on the "insufficiency of the proof of a material element of the crime." When reviewing a trial court's decision denying a motion for arrest of judgment, we must "engage in the same inquiry as the trial court" and ask whether "'any rational trier of fact, viewing the evidence in a light most favorable to the [S]tate, could find the essential elements of the charged crime beyond a reasonable doubt.'" *State v. Ceglowski*, 103 Wn. App. 346, 349, 12 P.3d 160 (2000) (quoting *State v. Longshore*, 141 Wn.2d 414, 420-21, 5 P.3d 1256 (2000)). "'A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We consider circumstantial evidence and direct evidence to be equally reliable. *State v. Smith*, 185 Wn. App. 945, 957, 344 P.3d 1244 (2015).

When reviewing the sufficiency of the evidence presented in a bench trial, "we determine whether substantial evidence supports the challenged findings of fact and whether the findings support the trial court's conclusions of law." *Id.* at 956. Evidence is substantial if it is "sufficient to persuade a fair-minded, rational person that the findings are true." *Id.* It is the defendant's burden on appeal to demonstrate that the evidence was not substantial. *Id.* at 957. We defer to the trial court on issues of witness credibility and conflicting testimony. *State v. Living Essentials, LLC*, 8 Wn. App. 2d 1, 14, 436 P.3d 857, *review denied*, 193 Wn.2d 1040 (2019), *cert. denied*, 141 S. Ct. 234 (2020).

In 2018, a person was guilty of failure to register as a sex offender "if the person ha[d] a duty to register under RCW 9A.44.130 for a felony sex offense and knowingly fail[ed] to comply with any of the requirements of RCW 9A.44.130." Former RCW 9A.44.132(1) (2015). RCW

9A.44.130(2)(a)(ii) requires that the person registering provide a "complete and accurate residential address."

Owens did not contest that he was required to register as a sex offender or that, between the dates at issue, he was registered as living at his father's address. The only dispute at trial was whether Owens was actually living at that address.

Even without considering Thomas's hearsay statement as substantive evidence, there was sufficient evidence to permit a rational trier of fact to conclude that Owens was not living at the address where he was registered. Thomas testified that Owens was living with him in summer 2018, but he also testified that Owens was "in and out of the house" at that time and that "he had his own place . . . right across the street." VRP (June 18, 2019) at 21-22. Thomas further testified that Owens was living across the street "[t]he whole time." *Id.* at 23. The trial court could infer from these conflicting statements that Owens was not living at his father's house during the relevant time period. And even though Owens testified that he was living at his father's house, the trial court determined that Owens's "testimony about his level of contact with his father and his level of contact with [his father's] address was not credible." CP at 16. We defer to the trial court on issues of witness credibility and conflicting testimony. *Living Essentials*, 8 Wn. App. 2d at 14. In addition, Simper testified that Owens was not present at the registered address when Simper visited. Although this fact alone is not sufficient to prove that Owens did not live at the registered address, we may consider it as relevant circumstantial evidence.

We conclude that, viewing the evidence in the light most favorable to the State, the State presented sufficient evidence to sustain Owens's conviction for failure to register as a sex offender without consideration of Simper's hearsay testimony.

No. 53925-0-II

CONCLUSION

The trial court improperly relied on Simper's hearsay testimony as substantive evidence, but viewing the evidence in the light most favorable to the State, the evidence was sufficient to sustain Owens's conviction for failure to register as a sex offender without the hearsay testimony. We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Lee, C.J.

Worswick, J.