IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

                Respondent,

        v.

A.M.W.C.,

                Appellant.

No. 82431-7-I

DIVISION ONE

UNPUBLISHED OPINION

COBURN, J. — A.C.[1] appeals his conviction for malicious mischief in the third degree through accomplice liability for participating in a rock-throwing incident resulting in a broken window. A.C. argues that his conviction was supported by insufficient evidence and that the trial court wrongly based the conviction on conspiracy grounds and erred in admitting a police officer's statements. We affirm.

FACTS

On May 10, 2020, at approximately 3:30 a.m., officers from the Arlington Police Department responded to a report of an activated security alarm at an elementary school. Officer Alex Donchez went to the school and saw a cracked window and a rock on the ground. The school groundskeeper testified that the

_____

[1] We refer to A.M.W.C. as "A.C." as that is how he was addressed at trial and in his briefing.

Citations and pin cites are based on the Westlaw online version of the cited material.

broken window that morning was "fresh damage" and that a broken window would have triggered the security alarm.

Another officer, Officer Rory Bolter, drove toward the school, and saw three juveniles walking away from the school area. As he activated his patrol car lights, he saw them scatter: two running toward the west up a hillside and another running to the east. Bolter radioed other officers the direction of the juveniles' movement. In another patrol car, Officer Justin Clark Olson saw two individuals emerge from the woods running. The two teens, later identified as A.C. (age 14) and I.M.J. (age 13), eventually complied with his request to stop.

Olson was joined by Officer Joshua Fox and they separated A.C. and I.M.J. for questioning after reading them their Miranda[2] rights. Fox testified that

> [A.C.] basically told me – initially, it was him and the other individual that I observed with Officer Olson, who were walking around the streets of Arlington. They decided hey, let's go through [sic] rocks at the school, at one of the windows. So that's what they did. They threw the rocks at the windows. When the windows broke, they said they freaked out a little bit, and it wasn't until they noticed the police officer that they chose to run from the location.

A.C. did not object to this testimony. Olson also questioned A.C. and A.C. told him that I.M.J. was there with him and they had been "hanging out" at the school with two other individuals. Fox testified that A.C. eventually told him there were five people involved. After questioning, A.C. and I.M.J. were released to their parents.

A.C. was charged with one count of malicious mischief in the third degree,

---

[2]Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

a gross misdemeanor.

At a bench trial in February 2021, Fox could not positively identify A.C. as the youth he encountered in May and stated, "[h]onestly, ma'am it's been almost a year. I don't remember what their faces looked like." But Fox asserted that the teen he spoke with "appeared similar in appearance" to A.C. in the courtroom. Olson testified that he recognized the individual on trial as one of the two juveniles he and Fox detained but could not remember whether he was A.C. or I.M.J. Defense counsel confirmed on the record that the person on trial was A.C.

Defense counsel cross-examined Fox about his recollection of A.C.'s statement made the night of the incident:

> Q. So in your report, when you are summarizing your conversation with A.C., you're paraphrasing what he said. Correct?
>
> A. How so? In what –
>
> Q. Well, I'm asking you, when you wrote your report, you're writing a summary of your interaction. Correct?
>
> A. Yes.
>
> Q. Okay. And there aren't direct quotation marks, are there?
>
> A. Right.
>
> Q. So you're paraphrasing what you recall of your conversation. Correct?
>
> A. What he told me, yeah.
> . . .
>
> Q. Do you recall if, when you spoke to A.C. about what happened that night, he used the words, "They all decided to throw

rocks at a window," or, "We"?

A. I don't remember the exact verbiage.

The court found A.C. guilty of malicious mischief through accomplice liability under RCW 9A.08.020(3). The court ruled:

> The Defense urges that there's little to no information to find A.C. guilty beyond a reasonable doubt, and I would concur if we are trying to make him solely responsible for this crime. There's no direct evidence that he in fact threw this rock. But what we have through the auspices of accomplice liability is a group of individuals, juvenile kids, who decided that they wanted to throw rocks at the school.
> They threw rocks at the school, and they committed this breaking of the window, which meets the definition of malicious mischief in the third degree. The testimony is – and I find it persuasive – that, when questioned about what he was doing, A.C. indicated that they all decided to throw rocks.
> And while not a direct confession or an implication of himself, it is a direct confession of a group or conspiracy of individuals who accomplished the purpose set out, which was to commit a crime, throwing rocks at the school. And under that theory, under 9A.08.020(3), I do find A.C. guilty beyond a reasonable doubt of the crime of malicious mischief in the third degree for throwing rocks or participating in the throwing of rocks and causing the damage at Eagle Creek Elementary School[.]

A.C. appeals.

## DISCUSSION

### A.C.'s Statements to Officer Fox

A.C. contends that the trial court "erred in admitting the hearsay statement, 'they all decided to throw rocks.'"

We first clarify what evidence was actually admitted. While the trial court did find that A.C. stated to Fox that "they all decided to throw rocks," Fox clarified that his testimony was a summary and paraphrasing of what A.C. said and not a direct quote. Neither does the statement accurately quote Fox's testimony at

4

trial. Fox paraphrased that A.C. explained he and I.M.J. were walking around the streets of Arlington and that they decided to go throw rocks at one of the windows at the school and then did throw rocks at the windows. Thus, while the record does not support a finding that A.C. used the exact words, "they all decided to throw rocks," the record does support that Fox testified to the substance of what A.C. stated to Fox about the rock throwing.

A.C. maintains that because Fox was unable to positively identify A.C. in court as the teen who made the statement to him, the statement was inadmissible under ER 801(d)(2). We disagree.

This court reviews a trial court's evidentiary rulings for an abuse of discretion. State v. Williams, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). "A court abuses its discretion when its evidentiary ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."' Id. The appellant has the burden to demonstrate an abuse of discretion. Id.

Hearsay, statements made by someone other than the person testifying, offered to prove the truth of the matter asserted, is inadmissible at trial unless it meets an exception. ER 801(c), ER 802. A statement is not hearsay if it meets the "party-opponent" hearsay exclusion: a statement "offered against a party" and the "party's own statement." ER 801(d)(2).

As an initial matter, the State argues that A.C. waived any error regarding alleged hearsay because A.C. failed to object at trial. Though appellate courts will not generally review an unpreserved error, they may exercise discretion to do so. State v. Blazina, 182 Wn.2d 827, 834, 344 P.3d 680 (2015); RAP 2.5(a)

("The appellate court may refuse to review any claim of error which was not raised in the trial court."). We elect to briefly address A.C.'s hearsay claim.

Prior to trial, A.C. raised a motion in limine to exclude hearsay from police officers who might testify to "the nature of his understanding" of discussions with a declarant, rather than testifying to what the declarant "actually said." The court denied the motion, explaining:

> That's not a proper motion in limine. That's an evidentiary ruling. If I exclude all hearsay, that means the State can never then find an exception to the hearsay rule and get some admitted, so it's not a proper motion in limine. It's an evidentiary ruling. . . . We'll take those up as they come along.

When evidentiary rulings are made pursuant to motions in limine, no further objection is required at trial.[3] State v. Heutink, 12 Wn. App. 2d 336, 355, 458 P.3d 796, review denied, 195 Wn.2d 1027, 466 P.3d 775 (2020). But when the trial court refuses to rule or makes only a tentative ruling subject to evidence developed at trial, the parties are under a duty to raise the issue at the appropriate time with proper objections at trial. Id.

A.C. elected not to object to Fox's testimony on the basis of hearsay and instead chose to cross-examine Fox and question, not A.C.'s identity as the speaker, but whether Officer Fox could remember exactly what A.C. said that morning.

---

[3] The State also correctly notes that in a bench trial, the trial judge is presumed to have followed the law and considered evidence solely for proper purposes. See State v. Disney, 199 Wn. App. 422, 432, 398 P.3d 1218 (2017). However, because the statements at issue are central to the State's case, the fact that this was a bench trial would not be a basis to not consider the issue.

During his cross-examination of Fox, A.C. focused on whether Fox might have misrepresented what A.C. said because the officer did not transcribe verbatim what A.C. told him. Although Fox was unable to physically recognize A.C. eight months after their conversation in the patrol car, he testified without hesitation that he spoke with A.C. on May 10 and described what A.C. told him that morning. Olson indicated that he recognized the respondent at trial was one of the two juveniles he and Fox detained on May 10 but could not remember if he was A.C. or I.M.J. It was undisputed that A.C. was the individual on trial. In fact, his counsel even clarified that for Olson. A.C., who did not testify at trial, did not dispute his identity or that Fox spoke with him on the morning of May 10. The record establishes the statements Fox testified about were statements made by A.C. and offered against A.C. Thus we conclude that A.C. fails to establish that the trial court admitted inadmissible hearsay.

<u>Sufficiency of the Evidence</u>

A.C. argues that the evidence at trial was insufficient to support his conviction for malicious mischief in the third degree.

The State must prove every element of a crime beyond a reasonable doubt. <u>State v. Kohonen</u>, 192 Wn. App. 567, 573, 370 P.3d 16 (2016); U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3. Where an appellant challenges his conviction for insufficient evidence, we review "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560

7

(1979); State v. Green, 94 Wn.2d 216, 616 P.2d 628 (1980).

Where we review a juvenile court adjudication, "we must decide whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law." State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Substantial evidence is "evidence sufficient to persuade a fair-minded person of the truth of the asserted premise." State v. N.B., 7 Wn. App. 2d 831, 837, 436 P.3d 358 (2019) (quoting State v. Homan, 181 Wn.2d 102, 106, 330 P.3d 182 (2014)).

A.C. was charged with malicious mischief in the third degree. The State was required to prove that A.C. "[k]nowingly and maliciously" caused physical damage to the elementary school under RCW 9A.48.090. Alternatively, the State was required to prove that A.C. acted as an accomplice to the crime. RCW 9A.08.020(3) states:

> (3) A person is an accomplice of another person in the commission of a crime if:
> (a) With knowledge that it will promote or facilitate the commission of the crime . . .
> (i) Solicits, commands, encourages, or requests such other person to commit it; or
> (ii) Aids or agrees to aid such other person in planning or committing it[.]

A.C. first contends there was no "direct evidence" showing he was involved as an accomplice and only one "ambiguous statement" that did not indicate his level of involvement in the crime. We disagree.

First, "direct evidence" is not required to affirm a conviction as both direct and circumstantial evidence are "equally reliable" when we review a case for sufficiency of the evidence. State v. Truong, 168 Wn. App. 529, 534, 277 P.3d

8

74 (2012).

But contrary to A.C.'s argument, the State did provide "direct evidence" of A.C.'s involvement as an accomplice: his statements to Fox that he and I.M.J. were walking the streets of Arlington, made a plan to throw rocks at the elementary school, and then followed through on that plan. "To aid and abet another person's criminal act, one must associate oneself with the undertaking, participate in it with the desire to bring it about, and seek to make it succeed by one's actions." State v. Robinson, 73 Wn. App. 851, 855, 872 P.2d 43 (1994). Fox's testimony supported that A.C. acted as an accomplice to the rock throwing. While Fox did not note A.C.'s "exact verbiage," A.C. admitted to Fox that he and I.M.J. were walking around Arlington and decided to throw rocks at a window at the school and then went and did it. Reviewing in a light most favorable to the State, Fox's testimony was sufficient to persuade the court that even if A.C. did not himself throw the actual rock that broke the window, A.C. knowingly participated in the plan to travel to the school with the intent to throw rocks at a window and, together with others, succeeded at causing physical damage to the school.

A.C. claims that his case resembles other cases where a conviction was overturned because a defendant was merely present during the crime, an insufficient basis to establish accomplice liability. A.C.'s case is distinguishable from the "passive observer" cases.

A.C. relies on State v. Robinson, 73 Wn. App. 851, 872 P.2d 43 (1994) and In re Welfare of Wilson, 91 Wn.2d 487, 588 P.2d 1161 (1979). In Robinson,

Robinson was driving a car with a friend in the front passenger seat. Robinson, 73 Wn. App. at 852. The friend, "without saying anything," jumped out of the car onto the sidewalk and took a teenage girl's purse. Id. at 852. Robinson shouted at his friend to get back into the car, and later, to remove the purse from the car. Id. at 852-53. This court overturned Robinson's conviction for robbery based on accomplice liability, ruling that Robinson "neither associated himself with [the friend's] undertaking, participated in it with the desire to bring it about, nor sought to make the crime succeed by any actions of his own." Id. at 857. In Wilson, Wilson was with a group of youth who strung a rope across a road and pulled it taut when cars came down the street. Wilson, 91 Wn.2d at 489. In overturning Wilson's conviction for reckless endangerment based on accomplice liability, the Washington Supreme Court ruled that Wilson's mere "presence" and "knowledge" of the crime, and "personal acquaintance with active participants" was insufficient to support the trial court's finding of abetting. Id. at 490.

Unlike the instant case, in Robinson and Wilson there was no evidence that either defendant admitted to planning the crime and then executing it. A.C. was not a passive observer to the crime. A.C. admitted that he and I.M.J. decided to throw rocks at the school window and then did so.

### Trial Court's Mention of Conspiracy

A.C. claims the trial court based the conviction on the court's conclusion that he was guilty of conspiracy to commit malicious mischief. We disagree with A.C.'s interpretation of the court's ruling.

In its oral ruling, the trial court concluded that A.C.'s statements to Officer

10

Fox were a "direct confession of a group or conspiracy of individuals who accomplished the purpose set out, which was to commit a crime, throwing rocks at the school." In findings of facts, the court noted that A.C.'s statements were "indicative of participation in a conspiracy to commit malicious mischief."

Conspiracy and accomplice liability are not the same crime. Compare RCW 9A.08.020(3) and RCW 9A.28.040. "Accomplice liability requires knowledge and a completed crime; conspiracy requires intent and a substantial step towards completion." State v. Stein, 144 Wn.2d 236, 242, 27 P.3d 184 (2001). Accomplice liability can be found when a person "with knowledge that it will promote or facilitate the commission of a crime" "aids or agrees to aid [another person] in planning or committing" a crime. RCW 9A.08.020(3). Criminal conspiracy is defined as "with the intent that conduct constituting a crime be performed" an individual "agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040(1).

The State did not charge A.C. with conspiracy. The State charged A.C. with the completed crime of malicious mischief in the third degree and the trial court found him liable as an accomplice. Though the quote marks suggesting a direct quote from A.C. was inaccurate in the court's findings of fact, substantial evidence supported the court's finding that A.C. told Fox that they, presumably meaning A.C. and I.M.J., decided to throw rocks at the school and a window was broken. In context, the court's use of the word "conspiracy" seems to have served only to indicate A.C.'s participation in planning to throw rocks at the

11

school.  Undisputed evidence established that the plan was completed.

For the reasons explained above, we conclude that despite using the word "conspiracy," the trial court did not base the conviction on a conclusion that A.C. was guilty of conspiracy, rather, it based the conviction on sufficient evidence of the crime.

We affirm.

Cohen, J.

WE CONCUR: