# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>    v.<br><br>Z. E. B.,<br><br>              Appellant. | No.  60560-1-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — ZEB was accused of raping his cousin, DT, when they were both juveniles at a church function.  Following a bench trial, ZEB was found guilty of unlawful imprisonment and second degree rape.

ZEB appeals.  He argues that the trial court improperly shifted the burden of proof by requiring him to prove that DT was lying.  ZEB also argues that the trial court erred when it modified ZEB's disposition to require sex offender registration.  The State responds that the trial court did not improperly shift the burden of proof, but it concedes that because of ZEB's age, he should not have been required to register as a sex offender.

We accept the State's concession regarding the registration requirement.  Because ZEB may have been 13 when he committed his offenses, he was not required to register as a sex offender under RCW 9A.44.130(1)(b)(iii).  We remand for the trial court to strike the registration requirement from the disposition order.  We otherwise affirm.

FACTS

In 2023, DT reported that several years earlier, ZEB blockaded her inside a room at a church and raped her. The State charged ZEB with unlawful imprisonment and second degree rape. ZEB was born in late October 2006, and although he was 17 years old when he was charged, he may have been either 13 or 14 when the incident occurred. Notwithstanding DT's report that the crimes occurred years earlier, the information alleged that ZEB committed the charged offenses in October 2023, the same month of the report.

The case proceeded to a bench trial. DT testified that the rape occurred "[t]owards the end of 2020," before a youth night at the church. Verbatim Rep. of Proc. (VRP at 37). DT was 13 at the time and ZEB was eight months older than her. DT and ZEB both testified that they were friendly with each other around the time of the charged incident, and no witness testified that there were ever any issues between the two before DT reported the rape.

DT testified that on the day of the incident, she and ZEB were picking up foam bullets around the church after playing with toy guns. As DT collected foam bullets from a lounge room of the church (described as a "little chill out room"), ZEB shut the door and blocked it with a chair to keep her from leaving. VRP at 39. He then grabbed DT and pushed her down between two couches. DT testified that ZEB first groped her, then moved her pants down and penetrated her vagina with his fingers. She tried to kick and fight back, but she was pinned between the couches. ZEB eventually stopped and left the room. DT testified that she did not tell anyone about the incident for several years.

At the close of the State's case in chief, ZEB moved to dismiss because the evidence presented showed that the incident occurred in 2020, not 2023 as alleged in the information. The

trial court denied the motion, characterizing the erroneous date in the information as a harmless scrivener's error.

ZEB began his defense by calling his mother, who taught Sunday school at the church, as a witness. ZEB's mother explained that DT had said that the incident occurred on "potluck Sunday."[1] VRP at 63. She said that on those days, ZEB would have been with her in her classroom, which was located upstairs from the lounge room, as she prepared to teach a Sunday school class. ZEB's mother insisted that she would have heard any commotion while preparing in her classroom and that the kitchen, located next to the lounge room, would have been full of people preparing for the potluck. She stated she knew ZEB was never downstairs on potluck days and denied that it was possible that he could have snuck down without her knowledge.

ZEB then provided brief testimony.[2] On both direct and cross-examination, ZEB flatly denied the allegations:

[Direct Examination]

Q. . . . [O]bviously you heard [DT's] testimony that at one point you forced her into some sexual behavior at the church; is that true?

A. No.

. . . .

Q. . . . And the scenario that we heard where you forced - you trapped her in a room and forced her to do some things, did any of that happen?

A. No.

. . . .

[Cross Examination]

Q. So there was never a time where you were alone with [DT]?

---

[1] DT initially reported that the incident occurred on the same day as a potluck, but did not mention this during her trial testimony.

[2] ZEB's entire testimony is contained on two pages of transcript.

A. No.

Q. Can you think of any incident that she might have confused for something that it wasn't or —

A. Not that I know of.

VRP at 77-78.

Following the presentation of the evidence, the trial court made lengthy oral comments before issuing its ruling:

> These cases are difficult, everyone understands that. Sex offenses are unique. They're very serious and, yet, often have no corroborative evidence. That's why the law states that no corroboration is required for any sex offense allegation like rape. There's a reason for that, because rape doesn't involve a witness or video cameras or - or live person or anybody that knows, because usually those type of things tend to happen behind closed doors and, you know, often secret in an area where someone is not going to see or hear. That's by design, right.
>
> So I look at that, right. And [the prosecutor] is correct, there was no evidence, whatsoever, to suggest or even hint at a motive. So I have to conclude that she's making it up. This is not like, oh, even if you believe her you can acquit. That's not true. If that's true, that can be true in other types of cases, but not these. Corroboration not required. So if I believe her, that's the bottom line, right. For any fact-finder, under a sex offense do I believe her, yes or no. And part of that analysis is why would she lie? . . . [T]hat's an awfully specific story. We went to this room and this is what was happening and he pushed me behind the couch and he - and he did this exact thing to me and - and I wasn't allowed to leave and . . . then it was over and he walked out. . . . [T]hat's an oddly specific story. So she's making it up? . . . [T]he respondent is certainly denying everything.

VRP at 84-85. The trial court then found that ZEB's mother's testimony "strain[ed] reality and credibility to think that she could have completely tracked his whereabouts every minute the whole time and also would have heard or seen something." VRP at 85.

The trial court also assessed DT's credibility. It observed that DT "didn't display a lot of emotion" while testifying, but it commented that victims sometimes "act in peculiar ways in response to abuse." VRP at 86.

4

I didn't see any indication that she was searching for an answer . . . based on her demeanor on the witness stand or her body posture or movements, the way she answered the questions. You know, I didn't see anything in that that would tell me that she's not telling the truth. I don't know. I mean, I have no - no basis to really say that she lacks credibility or that she's not telling the truth. . . . [I]t strains imagination why someone like herself would come to court and get up here and testify about this happening if it was completely fictional, when there's absolutely no explanation for why she would do such a thing. There's no motive. There's no connection. In fact, as I understand it, these two didn't hang out at all outside the church. They weren't - they didn't have anything romantic or otherwise. There was nothing. They didn't hang out normally. They just ran into each other at the church. So given that lack of history between the two of them, that's awfully random for her to all of a sudden one day say, oh, I'm going to make up a thing that he raped me for no reason, just - just for fun. That seems really unlikely. It seems unlikely to me. I don't get it. So I believe her, that's the bottom line.

VRP at 86-87.

In the end, the trial court adjudicated ZEB guilty of unlawful imprisonment and second degree rape. The trial court imposed a standard range sentence of 15 to 36 weeks. ZEB's disposition order did not require him to register as a sex offender. ZEB appealed.

After ZEB appealed, the State moved the trial court to amend the disposition order to require ZEB to register as a sex offender. The trial court granted the motion and imposed a registration requirement.

ZEB challenges his adjudications of guilt and the subsequent imposition of a sex offender registration requirement.

ANALYSIS

I. BURDEN OF PROOF

ZEB argues that the trial court improperly shifted the burden of proof. Rather than the State having the burden to prove its case, the trial court forced ZEB to prove his innocence. ZEB reasons that the trial court did not express an abiding conviction in the truth of the charge, but that

instead "the language used showed that the court defaulted to assuming the truth of D.T.'s accusations *unless* Z.E.B. provided a motive to fabricate." Br. of Appellant at 19. He contends that this was an incorrect understanding of the law that requires reversal.

The State responds that ZEB misconstrues the trial court by selectively excerpting only some of its comments. The State contends that in context the trial court's comments went to DT's credibility, not the State's burden. We agree with the State.

In general, when "reviewing a juvenile court adjudication, we must decide whether substantial evidence supports the trial court's findings of fact and, in turn, whether the findings support the conclusions of law." *State v. B.J.S.*, 140 Wn. App. 91, 97, 169 P.3d 34 (2007). Notably, ZEB does not base his argument on this standard of review; he instead argues that the trial court incorrectly applied the law by using the wrong burden of proof. We review a trial court's legal conclusions de novo. *Id.*

The fact-finder in any trial must make determinations about conflicting testimony, witness credibility, and the persuasiveness of the evidence. *Id.* We defer to these determinations on appeal. *Id.* And "when 'the judge is a trier of fact, illustrative comments phrased in the first person are not improper unless they evidence bias, prejudice, or other impropriety.' " *State v. Disney*, 199 Wn. App. 422, 432, 398 P.3d 1218 (2017) (quoting *Fernando v. Nieswandt*, 87 Wn. App. 103, 109, 940 P.2d 1380 (1997)). "[I]n a bench trial, we will presume that the judge followed the law and considered evidence solely for proper purposes." *Id.*

Evidence corroborating the victim's testimony is not required in sex offense cases. Chapter 9A.44 RCW, which defines sex offenses, provides, "In order to convict a person of any crime defined in this chapter it shall not be necessary that the testimony of the alleged victim be

corroborated." RCW 9A.44.020(1). "In short, the direct and positive testimony of the complaining witness, even though uncorroborated and denied by the accused, is sufficient to present a jury question." *State v. Galbreath*, 69 Wn.2d 664, 669, 419 P.2d 800 (1966). There is good reason for such a rule: sex offenses "are rarely if ever committed under circumstances permitting knowledge and observation by persons other than the accused and the complaining witness, and not all such offenses are otherwise capable of corroboration." *Id.* at 670.

Here, ZEB focuses mainly on the trial court's comment that " '[the prosecutor] is correct, there was no evidence, whatsoever, to suggest or even hint at a motive' " for DT to lie about the allegations. Br. of Appellant at 19 (alteration in original) (quoting VRP at 84). And he emphasizes that the trial court followed up by observing that there was " 'no explanation for why [DT] would' " testify about a fabricated incident. Br. of Appellant at 20 (quoting VRP at 86). From these statements, ZEB contends that the trial court believed that it "was not *allowed* to determine DT was fabricating *unless the defense provided evidence*." Br. of Appellant at 20. This, according to ZEB, improperly placed the burden on the defense.

But in full context, the trial court's comments show it was wrestling with components of credibility that all fact-finders must face, not reallocating the burden of proof. The trial court observed that part of the analysis of assessing an alleged victim's testimony is considering whether that person has a motive to lie. *B.J.S.*, 140 Wn. App. at 97. But the trial court considered other factors when it weighed DT's credibility, not just whether she had a motive to lie. For example, the trial court commented on DT's demeanor, stating, "I didn't see any indication that she was searching for an answer . . . based on her demeanor on the witness stand or her body posture or movements, the way she answered the questions. . . . I didn't see anything in that that would tell

me that she's not telling the truth." VRP at 86. Although the trial court described her testimony as "sort of matter of fact," it also suggested that victims can behave differently in response to trauma. VRP at 86.

The trial court then compared the different versions of events that it heard from the witnesses. It commented that ZEB's mother's testimony, by attempting to vouch for ZEB's whereabouts every time they attended church in 2020, "strain[ed] reality and credibility." VRP at 85. The trial court also characterized ZEB's brief testimony as "denying everything," while in contrast DT had told "an awfully specific story." VRP at 85. It was while comparing the different versions that the trial court reflected about DT's potential motives; stating, "it strains imagination why someone like [DT] would come to court and get up here and testify about this happening if it was completely fictional, when there's absolutely no explanation for why she would do such a thing," especially given that DT and ZEB had a friendly relationship and little interaction before the incident. VRP at 86. The trial court concluded that although DT's testimony was the only positive evidence of ZEB's guilt, corroboration of the victim's testimony is not required for these types of cases. RCW 9A.44.020(1).

Seen in context, the trial court's observation that there was no evidence that DT had a motive to lie was not referencing a shift in burdens, it was only one factor of many that the trial court used in analyzing DT's credibility. The trial court engaged in a lengthy credibility determination for DT as it weighed the only direct evidence of guilt—DT's testimony—against ZEB's flat denial and his mother's attempt to establish an alibi. Following this exercise, the trial court determined that DT's testimony was credible while the defense witnesses' testimony was not, and it was on that basis that the trial court adjudicated ZEB guilty. This was a correct

application of the law; indeed, this credibility determination was the trial court's duty as the fact-finder (just as it is our duty on appeal not to disturb credibility determinations). *B.J.S.*, 140 Wn. App. at 97. Thus, ZEB does not establish that the trial court improperly shifted the burden of proof.[3] Accordingly, we affirm ZEB's adjudications of guilt.

## II. SEX OFFENDER REGISTRATION

ZEB argues, and the State concedes, that we should remand for the trial court to strike the order amending the disposition that requires ZEB to register as a sex offender. We accept the State's concession.

Sex offender registration is required for juveniles if the juvenile "[c]omitted rape in the second degree when the person was age 14 or 15 and the person did not receive a special sex offender disposition alternative." RCW 9A.44.130(1)(b)(iii). ZEB was born in late October of 2006, and DT testified that the crimes occurred "[t]owards the end of 2020," the year that ZEB turned 14. VRP at 37. The State concedes that it is not clear whether ZEB was 13 or 14 years old when he committed the offenses, so requiring registration was inappropriate.

Additionally, the State moved to impose the registration requirement after ZEB appealed the original disposition order. Under RAP 7.2(e)(2), the trial court needed to obtain this court's permission before entering any decision that would "change a decision then being reviewed by the appellate court." No such permission was secured in this case.

---

[3] ZEB supports his position by citing to cases that found prosecutorial misconduct when prosecutors misstated the burden of proof to a jury. But there is a significant difference between a prosecutor making an improper argument to a jury, and a trial court acting as the fact-finder in a bench trial making observations about a victim's credibility. Unlike a jury that is likely unfamiliar with the law before receiving their instructions, we presume that judges know and follow the relevant law. *Disney*, 199 Wn. App. at 432.

Under either rationale, it was improper for the trial court to amend the disposition order to impose the registration requirement. Accordingly, we remand for the trial court to strike the registration requirement.[4]

## CONCLUSION

We remand for the trial court to strike the registration requirement from ZEB's disposition order. We otherwise affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

CRUSER, C.J.

MAXA, J.

---

[4] Beyond striking the registration requirement from the disposition order, ZEB requests that we order the trial court to require the "prosecutor to ensure that Z.E.B. has been removed from all sex offender registries." Br. of Appellant at 27. We presume that a natural consequence of striking the registration requirement from the disposition order is that ZEB would be removed from all registries. But neither party has provided briefing on our authority, if any, to exceed the current scope of this opinion.